**NORTH CYPRESS MEDICAL CENTER OPERATING COMPANY, LTD. and North Cypress Operating Company G.P., LLC, Appellants**

v.

**Matthew ST. LAURENT, M.D., Appellee.**

**In re North Cypress Medical Center Operating Company, Ltd. and North Cypress Operating Company G.P., LLC, Relators.**

Nos. 14–09–00204–CV, 14–09–00289–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Aug. 4, 2009.

J. Douglas Sutter, Houston, TX, for appellants.

Paul J. Dobrowski, Bruce B. Kemp, Houston, TX, for appellees.

Panel consists of Justices SEYMORE, BROWN, and SULLIVAN.

## OPINION

KENT C. SULLIVAN, Justice.

This consolidated appellate proceeding, consisting of an accelerated appeal and petition for writ of mandamus, arises from a doctor's attempts to prevent the sale of his profits-only ownership interest in a hospital's limited partnership. In the accelerated appeal, the partnership challenges a temporary injunction preventing

the sale or transfer of the doctor's shares. The trial court that issued the temporary injunction also ordered the partnership to deposit the doctor's future distributions into the court's registry, prompting the partnership to seek mandamus relief from this Court.

The doctor has not shown he has an inadequate remedy, at law, that is, that money damages would result in inadequate compensation for the loss of his profits-only share in the partnership. Thus, the record does not support a necessary finding that the doctor would suffer an irreparable injury but for the temporary injunction. Accordingly, we reverse the trial court's order granting a temporary injunction. We further hold that the record does not support a conclusion that disputed funds are likely to be lost or depleted, a necessary finding before a trial court may order a party to deposit money into the court's registry. Therefore, we conditionally grant the petition for writ of mandamus.

## I.

### BACKGROUND

In January 2004, Matthew St. Laurent, M.D., the appellee/real party in interest, purchased four limited partnership shares, termed "units," in North Cypress Medical Center Operating Company, Ltd. (the "partnership").[1] Under the terms of the limited partnership agreement (the "Agreement"), St. Laurent was permitted to share in the partnership's net income and occasional distributions but had no right to manage or control the partnership's operation, business, or activities. The Agreement also provided that the partnership, "at its sole option," could sell St. Laurent's shares without his consent for a variety of reasons, including his breach of the Agreement.

In November 2007, the partnership notified St. Laurent that he had breached the Agreement's non-competition clause and that it intended to sell his shares. He responded by filing suit against North Cypress for breach of contract, conversion, breach of fiduciary duty, and conspiracy to commit breach of fiduciary duty. He sought money damages in excess of $250,000, and also asked for the equitable remedy of an injunction preventing the sale of his shares.

In February 2009, the trial court granted St. Laurent's request for a temporary injunction, thereby preventing the partnership from transferring or selling his shares. That ruling prompted North Cypress to file this accelerated appeal. See Tex. Civ. Prac. & Rem.Code Ann. § 51.014(a)(4) (Vernon 2008). In addition, the trial court ordered North Cypress to pay into the court's registry St. Laurent's portion of any future partnership distributions. That order forms the basis for North Cypress's petition for writ of mandamus.

## II.

### TEMPORARY INJUNCTION

In the accelerated appeal, which we address first, North Cypress contends St. Laurent was not entitled to a temporary injunction because he failed to show that he would suffer an irreparable injury in the absence of injunctive relief. We agree.

 The purpose of a temporary injunction is to preserve the *status quo* of a

---

1. This accelerated appeal and mandamus proceeding were filed by North Cypress Medical Center Operating Company, Ltd., the limited partnership, and North Cypress Medical Center Operating Company G.P., L.L.C., the general partner. Where necessary, we will collectively refer to these entities as "North Cypress."

lawsuit's subject matter pending a full trial on the merits. *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex.2002). However, a temporary injunction is an extraordinary remedy that does not issue as a matter of right. *Id.* Instead, the applicant bears the burden of pleading and proving that he has (1) a cause of action against the defendant, (2) a probable right to the relief sought, and (3) a probable, imminent, and irreparable injury in the interim. *Id.*

■■■■ The party seeking injunctive relief—here, St. Laurent—carries the burden to demonstrate an irreparable injury. *See Reach Group, L.L.C. v. Angelina Group*, 173 S.W.3d 834, 838 (Tex.App.-Houston [14th Dist.] 2005, no pet.). An injury is considered irreparable if the party cannot be adequately compensated in damages, or if those damages are incapable of calculation. *Butnaru*, 84 S.W.3d at 204; *Reach Group, L.L.C.*, 173 S.W.3d at 838. Generally, however, courts do not enforce contractual rights by injunction, because an applicant who may recover breach-of-contract damages can rarely establish an irreparable injury and accompanying inadequate legal remedy. *Butnaru*, 84 S.W.3d at 211; *Reach Group, L.L.C.*, 173 S.W.3d at 838.

■■■■ We review the grant or denial of a temporary injunction for an abuse of discretion. *EMSL Analytical, Inc. v. Younker*, 154 S.W.3d 693, 696 (Tex.App.-Houston [14th Dist.] 2004, no pet.). A trial court does not abuse its discretion if it bases its decision on conflicting evidence in the record. *Law v. William Marsh Rice Univ.*, 123 S.W.3d 786, 792 (Tex.App.-Houston [14th Dist.] 2003, pet. denied). With respect to the resolution of factual issues, the appellant must establish the trial court reasonably could have reached only one decision. *Emeritus Corp. v. Ofczarzak*, 198 S.W.3d 222, 225–26 (Tex.App.-San Antonio 2006, no pet.). To the extent that we must consider the evidence to resolve this appeal, we review the evidence in the light most favorable to the trial court's order, indulging reasonable inferences in its favor. *See EMSL Analytical, Inc.*, 154 S.W.3d at 696. Therefore, we will not disturb the trial court's ruling if some evidence in the record reasonably supports the decision. *Butnaru*, 84 S.W.3d at 211. However, a trial court abuses its discretion if it misapplies the law to the established facts of the case. *Law*, 123 S.W.3d at 792.

Here, St. Laurent contends that his partnership shares are "unique" such that money damages cannot fully compensate him for their loss. In the alternative, he suggests that the amount of such damages cannot be adequately measured. We will address each of these contentions, in turn.

### A. "Uniqueness" of Profits–Only Limited Partnership Share

■■■■ Generally, money damages may be inadequate to compensate an injured party for the loss of property deemed to be legally "unique" or irreplaceable. *See, e.g., Patrick v. Thomas*, No. 2–07–339–CV, 2008 WL 1932104, at *3 (Tex.App.-Fort Worth May 1, 2008, no pet.) (mem. op.) (discussing owner's sentimental, nonmonetary attachment to horses). The "uniqueness" rule is most commonly applied when the disputed property involves real estate. *See Lavigne v. Holder*, 186 S.W.3d 625, 629 (Tex.App.-Fort Worth 2006, no pet.); *In re Stark*, 126 S.W.3d 635, 640 (Tex. App.-Beaumont 2004, orig. proceeding [mand. denied]) ("We agree ... that every piece of real estate is unique and that its uniqueness may, in an injunction case, constitute some evidence of an irreparable injury.").

Apparently hoping to invoke this common real-estate principle, St. Laurent claims that his partnership shares should

be treated as an interest in real estate because one of the purposes of the partnership is to own and maintain a hospital, North Cypress Medical Center. We disagree. First, the limited partners, including St. Laurent, do not own the hospital real estate; only the partnership does. Second, under the Agreement, St. Laurent has no right to control the management or operation of the hospital. Instead, as a limited partner, St. Laurent's only interest in the hospital real estate is confined to whatever net income may be generated from the hospital's business. Therefore, we are not persuaded that St. Laurent's attenuated connection to the physical plant of the hospital is sufficient to constitute a "unique" interest in real estate. *Cf. Lavigne*, 186 S.W.3d at 629 (upholding *land purchaser's* right to injunctive relief to prevent foreclosure on real estate).

 Alternatively, St. Laurent suggests that his shares are unique because they are irreplaceable. As he notes, the partnership's shares are not publicly traded and, under the terms of the Agreement, additional limited partners may not be admitted without the general partner's consent. Thus, St. Laurent is correct that, once he loses his shares, he cannot simply replace them with other partnership shares. However, he has not shown that money damages cannot take their place. That is, a subjective desire to keep one's shares does not, by itself, render money damages an inadequate substitute. *See Pesch v. First City Bank of Dallas*, 637 F.Supp. 1539, 1547 (N.D.Tex.1986). This is particularly true here where, unlike the shares discussed in *Pesch*, St. Laurent's ownership interest gives him no voice in the control or management of the partnership. *See Pesch*, 637 F.Supp. at 1546. Instead, the Agreement provides:

The General Partner shall conduct, direct and exercise full control over all activities of the Partnership. Except as otherwise expressly provided herein, all management powers over the business and affairs of the Partnership shall be exclusively vested in the General Partner, and *the Limited Partners shall not have any right of control or management power over the business and affairs of the Partnership.* ... [T]he General Partner shall have full power and authority to do all things deemed necessary or desirable by it to conduct the business of the Partnership without the consent or approval of the Limited Partners[.] [2]

The undisputed evidence in the record indicates that St. Laurent is at risk for loss of only his proportionate share in the partnership's net income and any future distributions. Both of these items represent an interest in *money*. Therefore, St. Laurent has not shown that breach-of-contract damages would be inadequate to compensate him for any such monetary losses.

### B. Calculation of Damages

 Alternatively, St. Laurent acknowledges that damages may compensate for the loss of partnership shares but argues that, in this case, his damages are incapable of mathematical calculation. *See Reach Group, L.L.C.*, 173 S.W.3d at 838. He reasons that, because no ready market exists for the sale and purchase of these privately held shares, the value of his ownership interest cannot be readily ascertained. However, the record does not support that argument.

The Agreement contains numerous provisions relative to the value of each limited partner's ownership interest in the partnership. Under its terms, the partnership must establish and maintain a "Capital

**2.** Emphasis added.

Account" as to each partner, reflecting the current value of his ownership interest. That amount incorporates, among other things, (1) the cash amount or fair market value of all shares owned by the partner, (2) his proportionate share of the partnership's net income or loss, (3) the amount of partnership liabilities attributable to him, and (4) the cash amount or fair market value of all distributions of cash or property made to him. In addition, the Agreement contains several other provisions affecting the value of each partner's Capital Account, including interest, value following transfer of a partnership interest, and the effect of loans to the partnership. In the event a partner's shares are to be sold, the Agreement specifies, through mathematical formulas, the exact consideration to be paid.

St. Laurent acknowledges that he can determine the value of his *current* ownership interest. In fact, during the temporary-injunction hearing, he testified about the value of his Capital Account as of a specific date shortly before the hearing. However, he claims that his *future* damages cannot be measured once he is divested of his shares, at which point he will no longer be eligible to receive distributions or a proportionate share of net income. He notes that, under the Agreement, the general partner may declare distributions in its sole discretion, "from time to time." Drawing from that fact, St. Laurent argues in his brief that "[t]here is nothing in the record that establishes any reliable method of affirmatively establishing the value of future distributions."

St. Laurent's argument misstates the burden of proof. In a temporary-injunc-

tion hearing, the burden is on the applicant to prove that his damages cannot be calculated, not on the non-movant to *disprove* that notion. *See Reach Group, L.L.C.,* 173 S.W.3d at 838. After reviewing the record, we conclude that St. Laurent failed to carry that burden because he produced no evidence, either express or implicit, that his future damages are simply too speculative to be calculated.[3]

To the contrary, expert witnesses frequently offer opinions about the value of a partnership interest,[4] even when, as here, some unspecified future revenue source remains pending. *See, e.g., Von Hohn v. Von Hohn,* 260 S.W.3d 631, 637–38 (Tex. App.-Tyler 2008, no pet.) (approving expert testimony as to value of partnership interest in a law firm, even though some of the firm's lawsuits had not yet settled or *even been filed* ). That task calls upon expert witnesses, out of necessity, to make reasonable assumptions about a litigant's future damages resulting from some intervening event, such as the defendant's alleged wrongdoing. *See, e.g., Columbia Med. Ctr. of Las Colinas, Inc. v. Hogue,* 271 S.W.3d 238, 254–55 (Tex.2008) (requiring expert's future-damage calculations to adhere to reasonable assumptions not inconsistent with undisputed facts); *Checker Bag Co. v. Washington,* 27 S.W.3d 625, 638–39 (Tex.App.-Waco 2000, pet. denied) (upholding future-damages testimony, based on reasonable assumptions, by expert economist). In that regard, this case is not unlike any other case involving the calculation of future damages. *See Hughes v. Houston Nw. Med. Ctr., Inc.,* 680 S.W.2d 838, 842 (Tex.App.-Houston [1st Dist.] 1984, writ ref'd n.r.e.) ("Damages must be established with reasonable

---

**3.** We note that, in his pleadings, St. Laurent seeks to recover money damages for North Cypress's alleged breach of contract. That fact, considered alone, suggests that the pros-

pect of calculating such damages is not insurmountable.

**4.** *See Coleman v. Coleman,* 170 S.W.3d 231, 241 (Tex.App.-Dallas 2005, pet. denied).

certainty, but the amount of damages need not be certain, or future damages would never be recoverable.") (citations omitted).

Here, although the Agreement introduces some degree of uncertainty about the precise timing of future distributions, it expressly requires the partnership to "use reasonable efforts to distribute *annually* at least an amount of Available Cash to the Partners sufficient to cover the federal, state and local income tax owing by the Partners as a result of Partnership allocations of income, gain, loss, deduction and credit to the Partners[.]"[5] Thus, the Agreement contemplates, at a minimum, annual distributions tied into the amount of the partnership's net income, if any. In addition, appropriate discovery should reveal the timing and amount of past distributions, facts that may offer insight into the predictability of future distributions. Moreover, St. Laurent's inability to predict the precise timing of the partnership's distributions of its assets does not mean that the net present value of his interest in those income-generating assets is incalculable. *See, e.g., State v. Whataburger, Inc.,* 60 S.W.3d 256, 262 (Tex.App.-Houston [14th Dist.] 2001, pet. denied) (discussing valuation of income-generating property).

Thus, on the record presented, St. Laurent did not prove that money damages could not compensate him or that such damages are incapable of calculation. Absent proof of an irreparable harm, St. Laurent was not entitled to injunctive relief. *See SRS Prods. Co. v. LG Eng'g Co.,* 994 S.W.2d 380, 386 (Tex.App.-Houston [14th Dist.] 1999, no pet.). Accordingly, we reverse the trial court's order, dissolve the temporary injunction, and remand.[6]

5. Emphasis added.

6. Because of our resolution of the accelerated appeal, we need not reach North Cypress's

## III.

### DEPOSITS INTO COURT'S REGISTRY

After granting the temporary injunction, the trial court, citing its inherent authority, also ordered North Cypress to deposit into the court's registry any future distributions attributable to St. Laurent. In response, North Cypress asked us to issue a writ of mandamus vacating the trial court's order because the record does not indicate that disputed funds are likely to be "lost or depleted," a requisite for the court's order. We agree, and conditionally grant mandamus relief.

### A. Mandamus Standard of Review

Mandamus relief may be available if the relator establishes a clear abuse of discretion for which there is no adequate appellate remedy. *See In re Prudential Ins. Co. of Am.,* 148 S.W.3d 124, 135–36 (Tex.2004) (orig. proceeding). Although we will not disturb the trial court's resolution of disputed fact matters, a trial court has no discretion in determining what the law is or in applying the law to the facts. *See Walker v. Packer,* 827 S.W.2d 833, 839–40 (Tex.1992) (orig. proceeding).

### B. Evidence of "Loss or Depleting" Funds

If there is evidence that disputed funds are in danger of being "lost or depleted," a trial court, through its inherent authority, may order a party to pay those funds into the court's registry. *See Castilleja v. Camero,* 414 S.W.2d 431, 433 (Tex. 1967). Here, however, the record contains no such evidence. Instead, the undisputed

alternative argument that the bond set by the trial court, as a condition of the temporary injunction, was too low.

evidence suggests only that the partnership may use the same bank account to fund several activities, including the reinvestment of funds into the hospital's physical plant. By itself, that evidence is insufficient to warrant the trial court's order in this case.

During the temporary-injunction hearing, St. Laurent testified that the hospital has recently undergone capital improvements, including an expansion of the existing structure and the construction of a separate professional building and parking garage. It appears that these capital improvements might be funded, at least in part, from the partnership's "Available Cash," the same source used to pay partner distributions. After reviewing these facts alone, the trial court concluded that the hospital's capital improvements are likely to deplete the funds available to pay future distributions. However, that legal conclusion is not supported by the evidence, for two reasons.

First, the funds in question have not been shown to be in danger of being "lost or depleted." Instead, the evidence suggests that those funds are being reinvested in the hospital's physical plant, a partnership asset. Thus, in the event St. Laurent prevails in the dispute over his partnership distributions, his efforts to collect on that judgment would not be limited solely to the hospital's "Available Cash" account. See generally Tex. Civ. Prac. & Rem.Code Ann. §§ 31.001–.010 (Vernon 2008). As St. Laurent conceded during oral argument, the record contains no suggestion that North Cypress is insolvent or otherwise unable to pay a potential judgment in this case.

Second, even were we to hold that reinvested funds qualify as "lost or depleted" within the meaning of Castilleja, the record is still insufficient to show that Available Cash is dwindling or being depleted.

For example, the record is devoid of evidence about (1) the balance of Available Cash, (2) the amount or source of the hospital's revenue and net income used to fund that account, (3) the monthly or annual cash flow in the Available Cash account (4) the cost of the ongoing capital improvements, or (5) the extent, if any, to which Available Cash may be dwindling because of the capital improvements.

Instead, the record, particularly the Agreement, hints only that North Cypress uses the Available Cash account for several purposes:

"*Available Cash*" shall mean, at the time of determination, all Partnership cash receipts derived from the conduct of the Partnership's business reduced by (i) such amount as is necessary to pay the current operating expenses and debt service of the Partnership, and (ii) such reserves for the reasonable needs of the Partnership's business as the General Partner shall determine, in its sole discretion, including reserves for replacements, capital improvements and additions.

Because the undisputed evidence does not indicate that funds are actually in danger of being lost or depleted, the trial court abused its discretion by ordering the payment of such funds into its registry. See Castilleja, 414 S.W.2d at 433; In re Deponte Invs., Inc., No. 05–04–01781–CV, 2005 WL 248664, at *2 (Tex.App.-Dallas Feb. 3, 2005, orig. proceeding) (mem. op.).

Further, we determine that, in this case, the benefits to mandamus review outweigh the detriments. See Prudential Ins. Co., 148 S.W.3d at 136. Here, North Cypress has been deprived of the use of its money without a showing either of liability or an intent to hide assets from a possible judg-

ment, as in *Castilleja*.[7] Therefore, we hold that North Cypress does not have an adequate remedy by appeal. *See Deponte Invs.*, 2005 WL 248664, at *2. Accordingly, we conditionally grant mandamus relief.

## IV.

### CONCLUSION

St. Laurent has not shown that, in the absence of a temporary injunction, he would suffer irreparable injury. Therefore, we reverse the trial court's ruling, dissolve the temporary injunction, and remand for further proceedings not inconsistent with this opinion.

In addition, we conditionally grant the petition for a writ of mandamus, and direct the trial court to vacate its order compelling North Cypress to deposit funds into the court's registry. We are confident the trial court will comply; therefore, the writ will issue only in the unlikely event that it fails to do so.

---

7. *Cf. Castilleja*, 414 S.W.2d at 433 ("Petitioner testified in the hearing on the writ of mandamus that he did not inten[d] to satisfy the judgment ... if the case was finally decided against him.").