02-09-039-CV














 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

NO. 02-09-00039-CV

 

 


 
 
 In the Matter of The Guardianship
 of Erma Lee Bays, An Incapacitated Person
 
 
  
 
 
  
 
 


 

 

------------

 

FROM Probate Court No. 2 OF Tarrant
COUNTY

------------

OPINION

------------

I.  Introduction

          Appellant Nyagudi O. Okumu appeals the
trial court’s order that, among other things, appointed Appellee Wells Fargo
Bank, N.A. as the temporary guardian of the estate of Erma Lee Bays.  In four issues, Okumu contends that the trial
court failed to properly serve him notice of the temporary guardianship
hearing; that the trial court deprived him of due process of law when it
ordered that he turn over funds to the trial court’s registry; that the trial court’s
order requiring him to turn over funds is not supported by the pleadings or
evidence and is vague and ambiguous; and that the trial court lacked
jurisdiction to hold him in contempt.  We
will affirm.

II.  Background

                On
September 15, 2008, a social worker filed a suggestion of need for guardianship
or need for investigation of circumstances under probate code section 683.  See Tex. Prob. Code Ann.
§ 683 (West Supp. 2010).  Among
other information, the suggestion stated that Bays, the proposed ward, had
transferred money to Okumu and that Bays was unable to care for her own
physical health and manage her own financial affairs.  Attached to the suggestion was a physician’s
certificate of medical examination indicating that Bays was partially
incapacitated and was unable to handle her financial affairs.  Based on the suggestion, the trial court
appointed a court investigator and a guardian ad litem to investigate.

          Based on her investigation, the
guardian ad litem filed an application for letters of guardianship on
October 27, 2008.  The guardian ad litem
requested that the trial court appoint a permanent guardian of the person and the
estate of Bays.  Following the filing of the
application for guardianship, the trial court appointed an attorney ad litem
to represent Bays on November 18, 2008.

          Okumu filed a pro se motion on
November 20, 2008, asking the trial court to inform him of any actions taken in
the case and asking the court to recognize that Bays had given him her power of
attorney.  On November 24, 2008, Okumu
filed another motion titled “Answer to Application for Letters of Guardianship
Section 683, Texas Probate Code and a Motion for Continuance on the Hearing
Therein.”  In that motion, Okumu claimed
to have an “interest in the welfare of [Bays].” 
Okumu’s attorney filed a notice of appearance as counsel on January 5,
2009.  That attorney filed a contest to
the guardianship.  In his contest, Okumu
claimed that Bays did not need a guardian. 
He alternatively requested that the trial court appoint him as the
guardian.

          On January 21, 2009, the guardian ad litem
filed an application for temporary guardianship.  See
id. § 875 (West Supp. 2010).  In the pleading, the guardian ad litem
alleged that emergency relief was needed because Okumu had withdrawn over
$200,000 from bank accounts held in Bays’s name and closed them.  The trial court held a hearing on January 27,
2009, regarding the temporary guardianship. 
Okumu, accompanied by new counsel, attended the hearing, asked the court
to rule on Okumu’s previous attorney’s request to be removed as his counsel,
and requested a continuance.  The trial
court denied the continuance, allowed Okumu’s substitution of counsel, and
conducted the temporary guardianship hearing. 
At the close of the hearing, the trial court appointed temporary
guardians—a temporary guardian of Bays herself and Wells Fargo as temporary
guardian of her estate.  In its temporary
guardianship order, the trial court ordered Okumu to place funds that had been
removed from Bays’s accounts or from accounts held jointly in Okumu’s and
Bays’s names, into the trial court’s registry. 
Okumu did not comply.  The trial
court eventually found Okumu in contempt and ordered him incarcerated.  This appeal followed.

III.  Discussion

          A.      Notice to Bays and the Trial Court’s
Jurisdiction

          In part of his first issue, Okumu
contends that Bays was never “personally served with citation” before the
guardianship hearing.  Thus, according to
Okumu, the trial court lacked jurisdiction to enter an order appointing
temporary guardians for Bays.

          Section 875(e) of the probate code
states that “[o]n the filing of an application for temporary guardianship, the
clerk shall issue notice that shall be
served on the respondent, the respondent’s appointed attorney, and the
proposed temporary guardian named in the application, if that person is not the
applicant.”  Tex. Prob. Code Ann. § 875(e).
 Relevant to this
case, a party may resort to substituted service, but only upon the failure of
those methods which provide proof of actual notice—personal service or service
by registered or certified mail, return receipt requested.  See Tex. R. Civ. P. 106(a), (b); State
Farm Fire & Cas. Co. v. Costley,
868 S.W.2d 298, 298–99 (Tex. 1993).  Rule
106 allows the trial court to sign an order approving a substitute method of
service, provided the movant files a motion supported by proper affidavit.  See Tex. R. Civ. P. 106(b); Costley, 868 S.W.2d at 299.  A trial court’s order authorizing substituted
service is the sole basis for such authority. 
Vespa v. Nat'l Health Ins. Co., 98 S.W.3d 749, 752 (Tex. App.—Fort Worth 2003, no pet.).

          Citing
cases that stand for the proposition that notice cannot be waived in a
temporary guardianship setting, Okumu contends that “personal service of a
putative or an alleged incapacitated person in a guardianship proceeding is
mandatory.”[1]  See e.g., Ortiz v. Gutierrez, 792 S.W.2d 118, 119 (Tex. App.—San Antonio 1989, writ dism’d)
(holding that the personal service requirement under the former guardianship
statute was jurisdictional and, therefore, the trial court properly dismissed a
guardianship proceeding when the proposed ward had not been personally
served).  But Okumu is simply mistaken in
his proposition that substituted service under Rule 106 is not an accepted
method of personal service in a temporary guardianship setting.

          In
this case the record demonstrates that after multiple attempts to serve Bays by
the certified process server under the methods that provide proof of actual
service, the process server resorted to court order; and in compliance with
Rule 106 and that order, he served Bays by attaching the notice to her door.  See Tex. R. Civ. P. 106(b).  The record contains an affidavit by the
process server, a motion for substituted service, an order by the trial court,
and a return by the process server—all before the hearing on temporary
guardianship.  We overrule this portion
of Okumu’s first issue.

          In
part of his first issue, Okumu also argues that because Bays was in the
hospital when the temporary guardianship hearing was held, she “could not [be] and
was not present at [the guardianship] hearing.” 
Thus, according to Okumu, the trial court lacked jurisdiction and its
order was void.  Although the probate
code does state that a proposed ward has the right to be present at the
hearing, we find no infirmity in the trial court allowing Bays’s attorney ad litem
to represent her interests while Bays remained in the hospital.  See Tex. Prob. Code Ann. § 685(a) (West 2003); In re Guardianship
of B.A.G., 794 S.W.2d 510,
513 (Tex. App.—Corpus Christi 1990, no writ) (reasoning that personal
appearance at a hearing appointing a guardian can be made by “representation by
counsel”).  We overrule this part of
Okumu’s first issue.

          In
the remainder of his first issue, Okumu seems to contend that the trial court
is required to demonstrate that a process server’s return be on file for ten
days prior to the temporary guardianship hearing.  See
Tex. R. Civ. P. 107.  Wells Fargo argues
that Okumu is trying to add statutory requirements to the probate code that do
not exist.  We conclude that probate code
section 875 does not have a ten-day-notice requirement prior to a hearing being
held.  See Tex. Prob. Code Ann. § 875.  Indeed, in a temporary guardianship
procedure, the probate code requires a hearing to be held “not later than the
10th day after the date of the filing of the application for temporary
guardianship.”  Tex. Prob. Code Ann. § 875(f)(1).  It would simply be impossible to allow a
return to be on file for ten days prior to the temporary guardianship hearing
and to hold the hearing within the statutorily required ten-day period.  We overrule the remainder of Okumu’s first
issue.

          B.      Due
Process

          In
part of his second issue, Okumu contends that he was deprived of due process of
law when the trial court ordered that he turn over funds that had previously
been in Bays’s bank accounts.  We
conclude that Okumu was not deprived of due process.

          Due
process of law requires that an individual receive notice and hearing before being deprived of a property right.  See Grannis v. Ordean, 234 U.S. 385, 394, 34 S. Ct. 779, 783
(1914) (“fundamental requisite of due process
of law is the opportunity
to be heard”).  But due process does not require that a complainant who has
been granted an opportunity to be heard and has had his day in court should, after a judgment has
been rendered against him, have further notice and hearing before supplemental proceedings
are taken to reach his property in satisfaction of the judgment against
him.  See
Ex parte Johnson, 654 S.W.2d 415, 418 (Tex. 1983)
(stating that notice and hearing
prior to issuance of a turnover order is not required).  In the absence of a statutory requirement, it
is not
essential that a complainant be given notice before the issuance of an execution against his tangible
property; after the rendition of the judgment, he must take notice of what will
follow, no further notice being necessary to advance justice.  Endicott
Johnson Corp. v. Encyclopedia Press, Inc., 266 U.S. 285, 288, 45 S. Ct. 61, 62–63 (1924).

          In
this case, Okumu complains that he was deprived of due process of law because
he was not given notice of the temporary guardianship hearing.  Okuma does not point this court to any
statutory requirement entitling him to notice prior to the hearing which he
participated in.  And the record
demonstrates that Okumu participated extensively in the temporary guardianship
proceedings.  He filed multiple motions
prior to the temporary guardianship hearing contesting both the guardianship
and his deposition in relation to the guardianship.  The application for guardianship clearly
indicated that Bays’s attorney would seek the return of funds that had been
removed by Okumu from Bays’s bank accounts. 
Okumu in fact attended the temporary guardianship hearing with counsel,
and his counsel questioned multiple witnesses at the hearing.  After the trial court issued its order which
Okumu now complains of, he then filed multiple post-hearing motions contesting
the guardianship.  In short, Okumu has
been granted his opportunity to be heard and had his day in court.  See Johnson, 654 S.W.2d at 418.  We
overrule this portion of Okumu’s second issue.



          C.      The Propriety of the Trial Court’s Order
that Okumu Deposit Funds into the Court’s Registry

          In part of his third issue, Okumu
contends that the trial court’s order requiring him to deposit funds withdrawn
by him or by Bays into the court’s registry is “void because it was not
supported by sufficient pleading or sufficient evidence and was vague and
ambiguous.”

          The trial court’s order appointing the
temporary guardians ordered that Okumu “shall deliver all funds withdrawn by
him or payable to him, or cash withdrawals by [Bays] from any sole or joint
accounts, certificates of deposit of [Bays] from October 27, 2008 to the present,
to the Registry of this Court.”  The
order also stated that the monies deposited into the court’s registry were to
include, but not be limited to:  $19,000.00 withdrawn from First
Financial Bank, $120,047.90 withdrawn from JPMorgan Chase Bank, $99,465.84
withdrawn from Bank of America, and $64,932.08 withdrawn from Woodforest
National Bank.

          Although it is difficult to decipher
exactly what Okumu is complaining of in this issue, we conclude that the court
requiring Okumu to deposit these funds into the court registry does not
implicate any of the theories seemingly argued by him.  In reaching this conclusion, we recognize
that a trial court does have some inherent authority to order an individual to
deposit funds into the court’s registry.  See Castilleja v. Camero, 414 S.W.2d 431, 433 (Tex. 1967)
(holding that when disputed funds are in danger of being lost or depleted, the
court can order payment of disputed funds into its registry until ownership is
determined); N. Cypress Med. Ctr. Operating Co. v. St. Laurent, 296 S.W.3d 171, 178 (Tex.
App.—Houston [14th Dist.] 2009, no writ) (same).  This is especially true when, as in this
case, a complainant can show a dispute about funds and show that the funds are
in danger of being depleted.  See Castilleja, 414 S.W.2d at 433–34.

          In this case, the guardian ad litem
gave detailed testimony regarding almost $300,000 that had been withdrawn from
various bank accounts held in Bays’s name or in joint accounts held in both
Bays’s and Okumu’s names.  The guardian
ad litem testified extensively about her investigation of Bays’s assets
and said that she believed Okumu had wrongfully removed funds from accounts
owned by Bays.  In addition, the guardian
ad litem testified that Bays had signed deeds and quitclaim deeds of her
property to Okumu.  All of this was done
at a time when Bays was ninety-three years old and in poor physical and mental
health.  Indeed, the immediate danger of
serious impairment to her and the imminent danger of loss to her property
served as the bases for the original suggestion by the social worker that Bays
was in need of a guardian.  More
specifically, the suggestion of guardianship stated that since the time Bays
had been unable to care for her own physical health and manage her own
financial affairs, she had been giving money to Okumu, had revoked her son’s power
of attorney appointment, and had granted that power to Okumu.  The suggestion further provided that it was
not clear why Bays had done such things and that Okumu had a questionable
background and had been disbarred in Indiana. 
Furthermore, the application for temporary guardianship specifically
requested the relief that Okumu be ordered to place these funds in the court’s
registry.  We hold that the trial court
did not err by ordering Okumu to place these funds in the court’s registry and
that its order is supported by the evidence and not void.  See Castilleja, 414 S.W.2d at 433–34. 
We overrule this portion of Okumu’s third issue.

          D.      Contempt Issues

          In the remaining parts of his second
and third issues, and in his fourth issue, Okumu makes various arguments
regarding the trial court having found him in contempt.  We conclude that we have no jurisdiction to
address these issues.

          Contempt
proceedings are not
appealable
because they “are not
concerned with disposing of all claims and parties before the court, as are
judgments; instead, contempt proceedings involve a court’s enforcement of its own
orders, regardless of the status of the claims between the parties before it.”  In re Office of Attorney Gen. of Tex., 215 S.W.3d 913, 915–16 (Tex.
App.—Fort Worth 2007, orig. proceeding); see also Norman v. Norman, 692 S.W.2d 655, 655 (Tex. 1985)
(holding that court
of appeals
had no jurisdiction
over an appeal
from an order finding a party not in contempt); In re Naylor, 120 S.W.3d 498, 500 (Tex. App.—Texarkana 2003, orig.
proceeding) (“Decisions in contempt proceedings are not appealable.”).  A ruling regarding a contempt proceeding can be challenged
only by an original proceeding.  In re
B.A.C., 144 S.W.3d 8, 11
(Tex. App.—Waco 2004, no pet.).  Thus,
because Okumu’s remaining portions of his second and third issues and his
entire fourth issue are an attempted appeal of the trial court’s contempt proceedings,
we have no jurisdiction
to address them.  We therefore
dismiss these issues.

IV.  Conclusion

          Having overruled Okumu’s first issue
and portions of his second and third issues, and having dismissed his remaining
issues for lack of jurisdiction, we affirm the trial court’s order.

 

 

BILL MEIER
JUSTICE

 

PANEL:  WALKER, MCCOY, and
MEIER, JJ.

 

DELIVERED:  June 23, 2011











[1]In his original
brief, Okumu argued that service was defective under Rule 106.  In his reply brief, Okumu changed the focus
of his issue, contending that substituted service is a waiver of personal
service and that substituted service is inappropriate in a guardianship
setting.  The record demonstrates that
the process server attempted multiple times to personally serve Bays, that Bays
refused to be served, and that the process server obtained a Rule 106 order and
complied with it.