**Reversed and Remanded and Memorandum Opinion filed December 27, 2018.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-17-00982-CV

---

### CHENIERE ENERGY, INC. AND CHENIERE LNG TERMINALS, LLC, Appellants

### V.

### PARALLAX ENTERPRISES LLC, PARALLAX ENERGY LLC, PARALLAX ENTERPRISES (NOLA) LLC, LIVE OAK LNG LLC, LIVE OAK LNG PIPELINE LLC, MOSS LAKE LNG LLC AND CALCASIEU LNG LLC, Appellees

---

### On Appeal from the 61st District Court
### Harris County, Texas
### Trial Court Cause No. 2017-49685

---

## MEMORANDUM OPINION

This is an interlocutory appeal from a trial court's order granting a temporary injunction. *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(4) (West Supp. 2018). The temporary injunction prevents appellants Cheniere Energy, Inc. and Cheniere LNG Terminals, LLC (CLNGT) (collectively "Cheniere Parties")

from non-judicially foreclosing on appellee Parallax Enterprises LLC's equity interest in a subsidiary, appellee Live Oak LNG LLC (Live Oak). In five issues, the Cheniere Parties contend the trial court abused its discretion in granting injunctive relief because appellees did not establish a probable right to recovery on their claims or that they would suffer imminent irreparable injury absent an injunction, and the trial court excluded certain evidence at the hearing on the temporary injunction.

We conclude the trial court abused its discretion in issuing the injunction because appellees did not establish that they would suffer irreparable injury absent an injunction. Even if CLNGT wrongfully forecloses on Parallax Enterprises' equity interest in Live Oak, the damage or harm can be quantified and remedied through monetary damages. Because appellees did not meet their burden to establish an inadequate remedy at law, we reverse the trial court's order granting a temporary injunction and remand for further proceedings.

**BACKGROUND**

The underlying dispute involves a failed attempt by the Cheniere Parties and several Parallax-related entities[1] (collectively "Parallax Parties") to develop jointly two mid-scale liquefied natural gas (LNG) facilities in Louisiana: Live Oak and the Louisiana LNG project. The Parallax Parties allege that they reached an agreement with the Cheniere Parties on all material terms for an "expanded joint development agreement, business association, and venture" to develop the two facilities. The proposed venture changed over time. According to the Parallax Parties, the parties agreed Parallax Enterprises would take the front-line role in

---

[1] The Parallax-related entities involved in this dispute include appellees Parallax Enterprises LLC, Parallax Energy LLC, Parallax Enterprises (NOLA) LLC, Live Oak LNG LLC, Live Oak LNG Pipeline LLC, Moss Lake LNG LLC and Calcasieu LNG LLC.

developing the facilities and the Cheniere Parties would provide funding of up to $120 million to develop the projects. The parties originally proposed to own the projects on a 50/50 basis, but later proposed that the Cheniere Parties would pay contractors directly to build the facilities and pay success fees to the Parallax Parties upon completion.

The Parallax Parties allege that while the parties were working on the written terms of a final agreement, the Parallax Parties began incurring expenses to develop the project. The Parallax Parties hired Bechtel Corporation to begin engineering and constructing the facilities. CLNGT advanced almost $46 million in development funds. To obtain the funds, Parallax Enterprises signed a Secured Promissory Note that was later amended several times (the Note). The Note was guaranteed by several of the Parallax Parties, including Live Oak, a subsidiary wholly owned by Parallax Enterprises. The Parallax Parties contend they signed the Note only to satisfy the Cheniere Parties' internal accounting department, and that the parties always intended the money to be considered a capital contribution—or equity—in the joint project rather than a loan that had to be repaid. The Cheniere Parties maintain the parties never reached a final agreement on the joint development of the projects and that the funds were advanced only as a short-term loan pursuant to the express terms of the Note. At the time they signed the Note, the Parallax Parties were not capitalized and had no assets or means to repay a loan.

Before the parties finalized the written terms of their agreement, the deal fell through. CLNGT demanded repayment of the $46 million under the Note. The Parallax Parties refused repayment, contending that the $46 million advanced under the Note was not debt but a capital contribution and that additional funds were due from the Cheniere Parties. According to the Parallax Parties, although

3

the parties had not finalized a written agreement, the Parallax Parties proceeded to develop the project and incurred expenses—including the execution of the Note—based on the Cheniere Parties' assurances that the advanced funds would be considered equity and not debt. Live Oak alleged that it incurred substantial liabilities to third parties, though it does not have any assets to pay the debts. The Parallax Parties ceased development of the two projects and were left owing $10 million in debt to third parties.

The Parallax Parties—including Live Oak—sued the Cheniere Parties, alleging claims for breach of contract, breach of fiduciary duties, promissory estoppel, quantum meruit, and fraudulent inducement of the Note. The Parallax Parties also sought declaratory relief that the Note constitutes equity rather than debt, and that the Note lacks an enforceable security interest. The Cheniere Parties counterclaimed, asserting the right to repayment of the $46 million under the Note and bringing third-party claims against four individual defendants and four entities affiliated with those defendants. In addition, CLNGT served notice that it intended to non-judicially foreclose on all of Parallax Enterprises' equity interest in Live Oak. The Cheniere Parties contend that Parallax Enterprises' interest in Live Oak was included as collateral to secure the Note.

The Parallax Parties sought injunctive relief to prevent Cheniere from: (1) foreclosing on Parallax Enterprises' interest in Live Oak; (2) interfering with or attempting to control the management, governance and/or operation of any of the Parallax Parties; and (3) otherwise disrupting the normal course of business of any of the Parallax Parties. The Parallax Parties also asserted that their rights under the Note are the subject of the lawsuit and that allowing CLNGT to foreclose would undermine the trial court's jurisdiction because it would allow the Cheniere Parties a "self-help remedy" without proving any of their claims. The Parallax Parties

4

maintained that the debt was not valid or enforceable, and that CLNGT did not have an enforceable security interest in Parallax Enterprises' equity interest in Live Oak. The Parallax Parties also argued imminent irreparable injury would result absent injunctive relief because monetary relief would not adequately remedy the interruption of Live Oak's operations, loss of Parallax Enterprises' management and control of Live Oak, and loss of the court's jurisdiction to determine the claims brought.

After an evidentiary hearing, the trial court granted the requested injunctive relief. The trial court's order states in pertinent part as follows:

> . . . the Court finds and holds that [the Parallax Parties] have demonstrated claims against [the Cheniere Parties]; have shown a likelihood of success on the merits of their claims; and, absent injunctive relief, will suffer imminent irreparable injury by, including but not limited to, losing ownership and control over assets, including the limited liability company interest of Live Oak LNG LLC, the rights to which are the subject of the parties' claims in this action, and through which claims are made by [the Parallax Parties] against [the Cheniere Parties]. Absent injunctive relief, [the Parallax Parties] also will be forced to defend their right to control claims made against [the Cheniere Parties], including defending against attempted dismissal of legal claims that [the Parallax Parties] make against [the Cheniere Parties] and with regard to claims that [the Cheniere Parties] state they intend to assert through ownership of the limited liability company interest in Live Oak LNG, LLC. The Court finds that an injunction is necessary to avoid a party performing an act relating to the subject of the pending litigation, in violation of the rights of the applicant, and that the act would tend to render the judgment in the litigation ineffectual. As such, [the Parallax Parties] have established a right to injunctive relief pursuant to Tex. R. Civ. P. 683 and Tex. Civ. Prac. & Rem. Code §§ 65.011(1) and (2), and their application should be GRANTED.

Pursuant to the terms of the injunction order, the Parallax Parties posted a cash deposit in lieu of bond. This appeal followed.

5

The Cheniere Parties raise the following issues in this appeal: (1) whether the trial court abused its discretion in entering a temporary injunction preventing them from exercising an express contractual right under the Note to foreclose on Parallax Enterprises' equity interest in Live Oak; (2) whether the trial court abused its discretion in concluding that the Parallax Parties carried their burden to prove an imminent, irreparable harm in the absence of injunctive relief; (3) whether the trial court abused its discretion in concluding the Parallax Parties carried their burden of proving a probable right to relief; (4) whether the trial court erred in concluding that the Parallax Parties were entitled to an injunction under section 65.011 of the Texas Civil Practice and Remedies Code; and (5) whether the trial court erred in precluding the Cheniere Parties from offering evidence relevant to unclean hands. Regarding the Cheniere Parties' second issue, we agree that the Parallax Parties did not meet their burden of establishing imminent, irreparable harm and conclude the trial court thus abused its discretion in issuing injunctive relief under general principles of equity and under section 65.011 of the Texas Civil Practice and Remedies Code. Given this disposition, we need not reach the Cheniere Parties' remaining issues. *See* Tex. R. App. P. 47.1

## I.     Temporary injunction requirements and review

The purpose of a temporary injunction is to preserve the status quo of the subject matter of the litigation pending a trial on the merits. *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002). A temporary injunction is an extraordinary remedy and does not issue as a matter of right. *Id.* To obtain a temporary injunction under equitable principles, the applicant must plead and prove (1) a claim against the defendant, (2) a probable right to the relief sought, and (3) a probable, imminent, and irreparable injury in the interim. *Id.*; *Hsin-Chi-*

*Su v. Vantage Drilling Co.*, 474 S.W.3d 284, 295 (Tex. App.—Houston [14th Dist.] 2015, pet. denied). These equitable elements of injunctive relief likewise apply to a request for injunctive relief under section 65.011 of the Texas Civil Practice and Remedies Code. *See* Tex. Civ. Prac. & Rem. Code § 65.001 ("The principles governing courts of equity govern injunction proceedings if not in conflict with this chapter or other law."); *Town of Palm Valley v. Johnson*, 87 S.W.3d 110, 111 (Tex. 2001) (per curiam) (applying irreparable harm element to application under Section 65.011(1)); *City of El Paso v. Caples Land Co.,* LLC, 408 S.W.3d 26, 37 (Tex. App.—El Paso 2013, pet. denied) (stating applicant must establish both probable right to relief and irreparable injury in addition to showing required by Section 65.011(2)).

To show a probable right to relief on a claim, the applicant is not required to establish that it will prevail at trial on the merits. *Hsin-Chi-Su*, 474 S.W.3d at 295. With regard to imminent and irreparable injury in the interim, an injury is considered irreparable if the party cannot be adequately compensated in damages or if those damages are incapable of calculation. *See Butnaru*, 84 S.W.3d at 204; *N. Cypress Med. Ctr. Operating Co., Ltd. v. St. Laurent*, 296 S.W.3d 171, 175 (Tex. App.—Houston [14th Dist.] 2009, no pet.). An adequate remedy at law is one that is "as complete, practical, and efficient to the prompt administration of justice as is equitable relief." *Tex. Black Iron, Inc. v. Arawak Energy Int'l Ltd.*, 527 S.W.3d 579, 584 (Tex. App.—Houston [14th Dist.] 2017, no pet.).

Money damages are generally adequate to compensate an injured party unless the loss at issue is considered "legally 'unique' or irreplaceable." *See St. Laurent*, 296 S.W.3d at 175. Thus, trial courts grant injunctive relief in foreclosure actions involving real property because real estate is generally considered unique. *See Butanaru*, 84 S.W.3d at 211 (noting a trial court may grant equitable relief

when dispute involves real property); *Pinnacle Premier Props., Inc. v. Breton*, 447 S.W.3d 558 565 n.10 (Tex. App.—Houston [14th Dist.] 2014, no pet.) (noting real estate is generally considered unique). Courts typically do not enforce contract rights by way of injunction, however, because an applicant who may recover breach-of-contract damages can rarely establish an irreparable injury or inadequate legal remedy. *St. Laurent*, 296 S.W.3d at 175. "In a temporary-injunction hearing, the burden is on the applicant to prove that his damages cannot be calculated, not on the non-movant to *dis*prove that notion." *Id.* at 177 (emphasis in original).

We review a trial court's order granting temporary injunctive relief for a clear abuse of discretion. *Henry v. Cox*, 520 S.W.3d 28, 33 (Tex. 2017). In reviewing the order, we view the evidence in the light most favorable to the trial court's ruling, indulging every reasonable inference in its favor. *LasikPlus of Tex., P.C. v. Mattioli*, 418 S.W.3d 210, 216 (Tex. App.—Houston [14th Dist.] 2013, no pet.). We do not review or decide the underlying merits of the case, but instead limit our review to the validity of the order. *Henry*, 520 S.W.3d at 33-34. The trial court does not abuse its discretion if some evidence reasonably supports its ruling. *Id.* at 34. A trial court abuses its discretion if it misapplies the law to the established facts of the case. *Tex. Black Iron, Inc.*, 527 S.W.3d at 584.

## II.     The Parallax Parties did not establish an irreparable injury.

The trial court found in its order that the Parallax Parties demonstrated an imminent irreparable injury from the planned foreclosure because: (1) Parallax Enterprises would lose ownership and control over assets, including Live Oak, the rights to which are the subject of the parties' claims in the case; and (2) the Parallax Parties would be forced to defend against dismissal of claims that Live Oak has asserted against the Cheniere Parties and against claims that the Cheniere Parties state they intend to assert through Live Oak. The trial court concluded that

injunctive relief is necessary to avoid the Cheniere Parties' performing an act relating to the subject of the pending litigation that would violate the Parallax Parties' rights and tend to render any judgment ineffectual under section 65.011(2).

In their second issue, the Cheniere Parties argue that the Parallax Parties failed to establish an imminent, irreparable injury, and the trial court abused its discretion in making these findings, because any harm resulting from foreclosure on the equity interest in Live Oak can be quantified through monetary damages. We agree.

As evidence of an imminent, irreparable injury, the Parallax Parties point to the following: (1) Live Oak has significant debt to vendors, which it alleges it incurred in reliance on the Cheniere Parties' promise to fund the project; (2) a portion of the $46 million advanced by the Cheniere Parties via the Note was used to repay vendors for costs associated with development of the project; (3) Live Oak's only assets are its claims against the Cheniere Parties in this litigation; (4) the attempt to foreclose is intended to provide the Cheniere Parties an avenue to sue Live Oak's principals and others for breach of fiduciary duty and other claims; (5) foreclosure on the interest in Live Oak would allow the Cheniere Parties to cause Live Oak to nonsuit its claims against them; and (6) at the time of the injunction hearing, CLNGT had posted the interest in Live Oak for foreclosure. These facts do not establish irreparable injury to the Parallax Parties.

### A. Loss of the claims asserted by Live Oak against the Cheniere Parties

The parties agree, and the evidence at the injunction hearing showed, that Live Oak has no assets other than its claims in this litigation. Those claims are for damages in the amount of the debt Live Oak incurred to vendors based on the Cheniere Parties' alleged promises, rescission or damages for alleged fraudulent

9

inducement of the Note, and a declaratory judgment that the Note is properly characterized as equity or does not create an enforceable security interest.

The evidence showed that Live Oak's debt to vendors, which Live Oak alleges it incurred in reliance on the Cheniere Parties' promise to fund the project, is for a sum certain. Live Oak's Accounts Payable Aging Detail report shows outstanding debt to vendors in the amount of almost $4.3 million. Whether CLNGT or Parallax Enterprises owns Live Oak and thus controls the claim regarding its debt to vendors does not change the quantifiable value of the claim that would be lost if the Cheniere Parties caused Live Oak to file a nonsuit. The Parallax Parties argue that foreclosure of Parallax Enterprises' interest in Live Oak would deprive it "of the damages awardable on those claims," which Parallax Enterprises would have to spend money to relitigate on Live Oak's behalf after proving that the foreclosure was unlawful. But the value of the claims lost could be quantified and awarded as damages in this case if it is shown that CLNGT wrongfully foreclosed upon the interest,[2] and some courts have held that attorneys' fees are available for obtaining a declaration of wrongful foreclosure.[3] The Parallax Parties produced no evidence that the Cheniere Parties could not pay any such damages and fees. *Cf. Tex. Black Iron*, 527 S.W.3d at 587 ("Texas cases hold that a plaintiff does not have an adequate remedy at law if the defendant faces

---

[2] *See St. Laurent*, 296 S.W.3d at 177 (reversing injunctive relief because applicant failed to establish his damages could not be calculated, noting expert witnesses frequently offer opinions regarding the value of a partnership interest); *Durkay v. Madco Oil Co., Inc.*, 862 S.W.2d 14, 21 (Tex. App.—Corpus Christi 1993, pet. denied) (stating measure of damages for wrongful foreclosure is difference between value of property at time of foreclosure and any indebtedness owed). In their reply brief, the Cheniere Parties describe the damages for the wrongful foreclosure as "the amount of vendor charges Live Oak supposedly incurred in reliance on Cheniere's alleged representations for which Parallax Enterprises became liable as a result of the foreclosure."

[3] *See, e.g., Cadle Co. v. Ortiz*, 227 S.W.3d 831, 837–38 (Tex. App.—Corpus Christi 2007, pet. denied).

10

insolvency or becoming judgment proof before trial.").

Regarding the Note, the Parallax Parties are correct that if CLNGT forecloses, the Cheniere Parties could cause Live Oak to nonsuit the fraudulent inducement and declaratory judgment claims that Live Oak currently asserts. The Parallax Parties' representative testified that foreclosure may complicate the litigation. But the other Parallax Parties are also either signatories to or guarantors of the Note, and they maintain all of the same right and ability to rescind, recharacterize, or obtain damages relating to the Note through their own claims against the Cheniere Parties. The Parallax Parties' right to relief under the Note claims is thus unaffected by whether Live Oak also maintains those claims. To the extent Live Oak suffers a separate negative impact from not pursuing these Note claims, Parallax Enterprises can obtain damages for Live Oak if it proves wrongful foreclosure as discussed above.

### B. Potential for the Cheniere Parties to cause Live Oak to assert claims

The Parallax Parties' argument that foreclosure may allow the Cheniere Parties to cause Live Oak to pursue claims against Live Oak's principals—some of whom are also principals of other Parallax Parties—also does not support the injunction. Live Oak's principals are not parties to the injunction, and the Parallax Parties have no standing to assert a potential threat of litigation against others as injury to themselves. *See Heckman v. Williamson Cty.*, 369 S.W.3d 137, 155 (Tex. 2012) (standing requires showing that plaintiff—rather than a third party or the public at large—was personally injured).

The Parallax Parties maintain that the Cheniere Parties could cause Live Oak to assert claims against them and that they have no legal remedy available to recoup the costs of defending against frivolous claims. Such apprehensions of

11

what the Cheniere Parties could do in the future do not constitute an *imminent* irreparable injury necessary for injunctive relief.[4] *See Camp Mystic, Inc. v. Eastland*, 399 S.W.3d 266, 276 (Tex. App.—San Antonio 2012, no pet.) ("fear or apprehension of the possibility of injury is not sufficient; injunctive relief requires the plaintiff to prove the defendant has attempted or intends to harm the plaintiff in the future" (internal quotation marks omitted)); *Morris v. Collins*, 881 S.W.2d 138, 140 (Tex. App.—Houston [1st Dist.] 1994, writ denied). There is no evidence that the Cheniere Parties intend to cause Live Oak to assert claims against the Parallax Parties, and apprehensions that they will do so cannot support injunctive relief. *Morris*, 881 S.W.2d at 140.

## C. Loss of control and ownership of Live Oak

The Parallax Parties also point to the loss of continued control and ownership by Parallax Enterprises over its interest in Live Oak as evidence of irreparable injury. Courts have recognized the existence of an irreparable injury where an applicant will suffer the loss of unique management rights in a company. For example, in *Sonwalkar v. St. Luke's Sugar Land Partnership, L.L.P.*, the court concluded that unique management rights related to interests in a limited liability partnership supported injunctive relief. 394 S.W.3d 186, 201 (Tex. App.—Houston [1st Dist.] 2012, no pet.). The management rights included the right to participate in the selection of governing members of the partnership that could block major actions, such as capital calls. *Id.*

Unlike the applicant in *Sonwalkar*, the management rights cited by the Parallax Parties in this case can be measured by a certain pecuniary standard. The only evidence of management rights in Live Oak that would be lost concerned

---

[4] We note that rules and statutes authorize sanctions against parties for filing frivolous claims. *Nath v. Tex. Children's Hosp.*, 446 S.W.3d 355, 365 (Tex. 2014).

12

management of claims in litigation. The value of claims in litigation can be measured by a certain pecuniary standard regardless of who manages the claims, and thus loss of management does not establish an irreparable injury. *See St. Laurent*, 296 S.W.3d at 176 (finding no irreparable injury because loss of partnership shares could be measured in money damages); *see also Doerwald v. MBank Fort Worth, N.A.*, 740 S.W.2d 86, 90 (Tex. App.—Fort Worth 1987, no writ) (finding no irreparable injury because party to joint venture agreement with 5% interest in profits could be compensated for lost profits measured by pecuniary loss standard).[5]

### D.    Section 65.011

The Parallax Parties also argue that section 65.011(2) of the Texas Civil Practice and Remedies Code authorizes the temporary injunction. Section 65.011(2) permits a trial court to issue an injunction when a party is about to perform an act relating to the subject matter of pending litigation, in violation of the rights of the applicant, and the act would tend to render the judgment in the case ineffectual. *See* Tex. Civ. Prac. & Rem. Code § 65.011(2); *Topletz v. City of Dallas*, No. 05-16-00741-CV, 2017 WL 1281393, at *4 (Tex. App.—Dallas Apr. 6, 2017, no pet.) (mem. op.) (affirming injunction in part where trial court found conduct of defendants affected core functions of the court).

We conclude that section 65.011(2) does not support the trial court's injunction here for two reasons. First, the Parallax Parties must also establish the existence of an irreparable injury under section 65.011(2). *See Town of Palm*

---

[5] Courts do recognize the propriety of injunctive relief where the enjoined conduct threatens to disrupt an ongoing business. *See Sonwalkar*, 394 S.W.3d at 199-200; *Liberty Mut. Ins. Co. v. Mustang Tractor & Equip. Co.*, 812 S.W.2d 663, 666 (Tex. App.—Houston [14th Dist.] 1991, no writ). But the Parallax Parties presented no evidence at the hearing and make no argument on appeal that foreclosing on the equity interest in Live Oak would disrupt any ongoing business.

*Valley*, 87 S.W.3d at 111 (holding that applicant seeking a temporary injunction under subsection 65.001(1) of the general injunction statute was not exempt from traditional requirement of irreparable harm); *City of El Paso*, 408 S.W.3d at 37. As discussed above, the Parallax Parties did not meet their burden of establishing this element for injunctive relief.

Second, the statute requires the Parallax Parties to establish that the act complained of would render any judgment by the trial court ineffectual. The Parallax Parties argue that allowing CLNGT to foreclose on the equity interest in Live Oak under the Note would render a judgment in this case at least partially ineffectual because the trial court could ultimately find that the Cheniere Parties have no rights under the Note, thus allowing the Cheniere Parties to exercise disputed rights before they can be adjudicated. But the Parallax Parties' representative testified that even if CLNGT forecloses on Live Oak, Parallax Enterprises would not dismiss its claims against the Cheniere Parties.[6] Parallax Enterprises does not contend it will be entitled to more money under its claims if it owns Live Oak than if it does not. In other words, Parallax Enterprises' ownership of Live Oak does not affect its ability to pursue its claims regarding the validity of the Note in this lawsuit. Because the Parallax Parties have not shown that the relief they seek in this lawsuit would be affected even if the injunction were not issued, there is no showing that the judgment would be rendered ineffectual. *See Guillermo Benavides Garza Inv. Co. v. Benavides*, No. 04-13-00453-CV, 2014 WL 3339555, at *4 (Tex. App.—San Antonio July 9, 2014, no pet.) (mem. op.).

As to any injury that Live Oak might suffer from foreclosure, nothing in the record or in the Parallax Parties' argument suggests that monetary damages could not be awarded to compensate for wrongful foreclosure or that any judgment

---

[6] The representative testified only that the lawsuit may get more complicated.

awarding those damages would be ineffectual. *See Hotze v. Hotze*, No. 01-18-00039-CV, 2018 WL 3431587, at \*6 (Tex. App.—Houston [1st Dist.] July 17, 2018, no pet.) (mem. op.) (applicant presented no evidence that judgment rendered against brothers for wrongfully receiving advance payments would be rendered ineffectual). The cases the Parallax Parties cite involved materially different facts and do not support a temporary injunction here. *See Brazos River Conserv. & Reclamation Dist. v. Allen*, 171 S.W.2d 842, 847 (Tex. 1943) (permitting injunction because allowing separate suit involving same subject matter to go forward would "not afford a remedy as practical and efficient to the ends of justice and its prompt administration as that of injunction"); *Gen. Fin. Servs., Inc. v. Practice Place, Inc.*, 897 S.W.2d 516, 519 (Tex. App.—Fort Worth 1995, no writ) (involving foreclosure on real property); *Trinity Water Reserve, Inc. v. Evans*, 829 S.W.2d 851, 866 (Tex. App.—Beaumont 1992, no writ) (restraining action that could put applicants into bankruptcy because applicants would have no realistic or fully adequate remedy at law).

We conclude that any damages to the Parallax Parties from the loss of Parallax Enterprises' equity interest in Live Oak can be measured by a certain pecuniary standard. The trial court abused its discretion in finding the Parallax Parties would suffer an irreparable injury where the evidence established any losses could be compensated through monetary damages. We sustain the Cheniere Parties' second issue.

## CONCLUSION

Having sustained the Cheniere Parties' second issue asserting that the trial court abused its discretion because the Parallax Parties have not established an irreparable injury, we need not address the Cheniere Parties' remaining issues. We reverse the trial court's order granting temporary injunctive relief and remand for

15

further proceedings.


                                        /s/     J. Brett Busby
                                                Justice


Panel consists of Chief Justice Frost and Justices Boyce and Busby.