

IN THE
TENTH COURT OF APPEALS

_____

No. 10-09-00338-CV

_____

FORREST PROPERTY MANAGEMENT, INC.
AND CHARLES MICHAEL FORREST,

Appellants

 v.

WILLIAM CLINTON FORREST,

Appellee

_____

From the 18th District Court
Johnson County, Texas
Trial Court No. C200900357

_____

## MEMORANDUM  OPINION

_____

Forrest Property Management, Inc. and Charles Michael Forrest ("Mike") have appealed the granting of a temporary injunction ordering them to "desist and refrain from mortgaging, hypothecating or otherwise encumbering any property owned and/or managed by the Forrest Cleburne Properties, L.P." William Clinton Forrest ("Clint") had sought the injunction to prevent Mike from using the real estate owned by Forrest Cleburne Properties, L.P., as collateral for a line of credit for floor plan financing for a separate entity, Forrest Chevrolet-Cadillac, Inc. The appellants complain that the trial court abused its discretion by granting the temporary injunction because the

temporary injunction lacked specificity, because Clint did not establish all of the required grounds for the issuance of a temporary injunction, and because the findings listed in the injunction are not specific or supported by the facts. Because we find that the trial court abused its discretion in finding that Clint established a probable, imminent, and irreparable injury, we reverse the trial court's order, dissolve the temporary injunction, and remand this cause to the trial court for further proceedings.

*Facts*

Forrest Cleburne Properties, L.P. was formed as a Texas Limited Liability Partnership. Forrest Property Management, Inc. was named as the general partner and held a one percent (1%) ownership interest. Forrest Property Management, Inc. is equally owned by Mike and the Martha J. Forrest Management Trust. The limited partners and their respective ownership interests are: Clint, with twenty-five percent (25%); Mike, with twenty-four and one-half percent (24.5%); and the Martha J. Forrest Management Trust with forty-nine and one-half percent (49.5%). Some time thereafter, the entity currently known as Forrest Chevrolet-Cadillac, Inc. conveyed approximately fifty-two (52) acres of real estate to Forrest Cleburne Properties, L.P. for $2.145 million, which was secured by a note and deed of trust. That same day, the property was leased back to Forrest Chevrolet-Cadillac, Inc. for $20,000.00 per month. Mike was the president of Forrest Property Management, Inc. and Forrest Chevrolet-Cadillac, Inc., as well as a trustee in the Martha J. Forrest Management Trust.

At one time, several acres of the tract were sold to a third party for approximately three million dollars. A natural gas production company and pipeline

company entered into a lease agreement with Forrest Cleburne Properties, Inc. It is not clear in the record what the terms of the agreement were other than Forrest Cleburne Properties, Inc. had been paid a one-time payment and received lease payments and royalties in accordance with the lease agreement.

When General Motors filed for bankruptcy protection, Forrest Chevrolet-Cadillac, Inc.'s franchise was terminated or suspended, which resulted in the loss of their floor plan financing through General Motors Acceptance Corporation. In order to find a way to obtain a new line of credit, Mike intended to use the real property owned by Forrest Cleburne Properties, Inc., as collateral to secure the line of credit to Forrest Chevrolet-Cadillac, Inc.

Clint filed a petition against Forrest Property Management, Inc. and Charles Michael Forrest alleging causes of action for breach of fiduciary duty, tortious interference, and breach of the partnership agreement. He also obtained a temporary restraining order against Forrest Property Management, Inc. and Mike. This appeal stems from the temporary injunction granted by the trial court after a hearing.

*Standard of Review*

The decision to grant or deny a temporary injunction lies within the sound discretion of the trial court. *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002). A reviewing court should reverse an order granting injunctive relief only if the trial court abused that discretion. *Id*. The reviewing court must not substitute its judgment for the trial court's judgment unless the trial court's action was so arbitrary that it exceeded the bounds of reasonable discretion. *Id*.

For purposes of this appeal, we presume all findings necessary to support the trial court's order, and affirm the order if there is any legal theory sufficiently raised by the evidence to support it. *Davis v. Huey*, 571 S.W.2d 859, 862 (Tex. 1978). Generally, if some evidence reasonably supports the trial court's decision, the trial court does not abuse its discretion. *Butnaru*, 84 S.W.3d at 211 (*citing Davis*, 571 S.W.2d at 862).

The purpose of a temporary injunction is to maintain the status quo of the litigation's subject matter pending a trial on the merits. *Butnaru*, 84 S.W.3d at 204. Status quo has long been defined as "the last, actual, peaceable, non-contested status which preceded the pending controversy." *State v. Sw. Bell Tel. Co.*, 526 S.W.2d 526, 528 (Tex. 1975). The applicant must plead and prove three elements to obtain a temporary injunction: (1) a cause of action against the defendant; (2) a probable right to the relief sought; and (3) a probable, imminent, and irreparable injury in the interim. *Butnaru*, 84 S.W.3d at 204. An injury is irreparable if the injured party cannot be adequately compensated in damages or if the damages cannot be measured by any certain pecuniary standard. *Id*.

### Failure to Establish Elements

This Court has followed the standard set forth in *Butnaru* for determining whether or not a temporary injunction was properly instituted by a trial court. *See Manheim v. Adam Dev. Props., L.P.*, No. 10-09-00259-CV, 2009 Tex. App. LEXIS 9824 (Tex. App.—Waco Dec. 30, 2009, no pet. h.). Appellants complain that the trial court abused its discretion in granting the temporary injunction because Appellee did not meet his burden of proof to establish any of the three elements required. Because we agree with

Appellants that Appellee did not meet his burden of proof regarding a probable, imminent, and irreparable injury, we will only address that element.

*Probable, Imminent, and Irreparable Injury*

The Appellants complain that the trial court abused its discretion by finding the existence of probable, imminent, and irreparable injury in the interim because there was no evidence that Clint's damages were incapable of calculation, no evidence that either of the Appellants were incapable of responding in damages, and no evidence that there is no certain pecuniary standard for measuring Clint's alleged damages.

Clint contends that every parcel of real estate is unique, which should be considered in determining whether the injury is irreparable. Clint further contends that because Mike has already driven Forrest Chevrolet-Cadillac, Inc. into insolvency, there is a risk that by using the partnership's real estate to assist that entity, Mike will cause the loss of the real estate. This would then result in a damage award that would come too late to save Forrest Cleburne Properties, L.P. Further, Clint contends that the damages are difficult to calculate because of the real estate involved and the questions regarding the accounting practices of Mike and the various entities under his control.

Generally, money damages may be inadequate to compensate an injured party for the loss of property deemed to be legally "unique" or irreplaceable. *N. Cypress Med. Ctr. Operating Co. v. St. Laurent*, 296 S.W.3d 171, 175 (Tex. App.—Houston [14th Dist.] 2009, no pet.). The "uniqueness" rule is most commonly applied when the disputed property involves real estate. *See Lavigne v. Holder*, 186 S.W.3d 625, 629 (Tex. App.—Fort Worth 2006, no pet.); *In re Stark*, 126 S.W.3d 635, 640 (Tex. App.—Beaumont 2004,

orig. proceeding [mand. denied]) (finding that real estate is unique and therefore, may constitute some evidence of an irreparable injury).

The partnership agreement between the parties states that the interest of each partner is personal property and that "[a]ll property and interests in the property, real or personal, owned by the Partnership shall be deemed owned by the Partnership as an entity, and no Partner or Assignee, individually, shall have any ownership of such property or interest owned by the Partnership except as a Partner in the Partnership or an Assignee. Each of the Partners and the Assignees irrevocably waives, …, any right that such Partner or Assignee may have to maintain any action for partition with respect to any of the assets of the Partnership." Clint's interest in the partnership is that of a limited partner in Forrest Cleburne Properties, L.P., and he has no direct ownership interest in the real property at all.

Because Clint's interest is not an interest in real estate, we do not consider the evidence regarding the unique nature of that real estate to be evidence of an irreparable injury or of the existence of an inadequate remedy at law. *See N. Cypress Med. Ctr. Operating Co.*, 296 S.W.3d at 175 (limited partner's shares of the limited partnership not sufficient to constitute a unique interest in real estate.); *see also*, *e.g.*, *Doerwald v. MBank Fort Worth, N.A.*, 740 S.W.2d 86, 90-91 (Tex. App.—Fort Worth 1987, no writ) (ample evidence to support trial court's finding that applicant failed to prove irreparable injury or inadequate remedy at law from foreclosure where applicant did not own equity interest in property).

Further, it is important to note that the burden of proof to establish a probable, immediate, and irreparable injury was on Clint. *See N. Cypress Med. Ctr. Operating Co.*, 296 S.W.3d at 177; *Marketshare Telecom, L.L.C. v. Ericsson, Inc.*, 198 S.W.3d 908, 925 (Tex. App.—Dallas 2006, no pet.). A party proves irreparable injury for injunction purposes by proving that damages would not adequately compensate the injured party or cannot be measured by any certain pecuniary standard. *Butnaru*, 84 S.W.3d at 204; *Frequent Flyer Depot, Inc. v. American Airlines, Inc.*, 281 S.W.3d 215, 227 (Tex. App.—Fort Worth 2009, pet. denied). Damages are an inadequate remedy if they are difficult to calculate. *Frequent Flyer Depot*, 281 S.W.3d at 228-29.

In the hearing, Mike Forrest testified that he was uncertain as to where certain monies had gone, but that his accountants had all of the financial information of the partnership. Clint's claims were for money damages for a breach of fiduciary duty and tortious interference. Clint claims that Mike had driven Forrest Chevrolet-Cadillac, Inc. into insolvency. Further, Clint contends that the insolvency of Forrest Chevrolet-Cadillac, Inc., taken with Mike's intent to use the property of the partnership to resurrect it, establishes a substantial risk that the real property would be lost. This would render any damage award too late. However, no evidence was presented at the temporary injunction hearing regarding the financial condition of either Mike Forrest individually or of Forrest Property Management, Inc. for the trial court to determine whether either Mike or Forrest Property Management, Inc. were incapable of responding to monetary damages.

Clint further contends that his damages are difficult to calculate due to the unique nature of the property at issue and "the convoluted mess of accounting and business practices utilized by the partnership, the appellant and his dealership." Because we have determined that the unique nature of the real property is not a factor, we turn to the calculation of damages. While there was testimony of some large sums of money that were unaccounted for, there was also testimony that the accountants used for the limited partnership and the other entities involved were in possession of all of the financial information for the entities and that the monies could be accounted for by them.

Thus, on the record presented, Clint did not meet his burden of proof to establish that money damages could not compensate him or that such damages are incapable of calculation. Absent proof of an irreparable injury, Clint was not entitled to injunctive relief. *See N. Cypress Med. Ctr. Operating Co.*, 296 S.W.3d at 175. Accordingly, we reverse the trial court's order, dissolve the temporary injunction, and remand this cause to the trial court for further proceedings.

*Conclusion*

We find that the trial court abused its discretion in granting the temporary injunction. Therefore, we reverse the trial court's order, dissolve the temporary injunction, and remand this cause to the trial court for further proceedings.


TOM GRAY
Chief Justice

Before Chief Justice Gray,
      Justice Reyna, and
      Justice Davis
Reversed and remanded
Opinion delivered and filed July 21, 2010
[CV06]