**Opinion issued November 7, 2013**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-13-00273-CV

———————————

**SHATISH PATEL, M.D., HEMALATHA VIJAYAN, M.D., SUBODH SONWALKAR, M.D., WOLLEY OLADUT, M.D., Appellants**

**V.**

**ST. LUKE'S SUGAR LAND PARTNERSHIP, L.L.P. AND ST. LUKE'S COMMUNITY DEVELOPMENT CORPORATION-SUGAR LAND, Appellees**

---

**On Appeal from the 152nd District Court**
**Harris County, Texas**
**Trial Court Case No. 2011-24016**

---

## DISSENTING OPINION

Appellants, Dr. Shatish Patel, Dr. Hemalatha Vijayan, Dr. Subodh

Sonwalkar, and Dr. Wolley Oladut (the "Physician Partners"), appeal the trial

court's denial of this their renewed application for a temporary injunction seeking to enjoin appellees, St. Luke's Sugar Land Partnership, L.L.P. (the "Partnership") and St Luke's Community Development Corporation-Sugar Land (the "Managing Partner") (collectively, "St. Luke's"), from (1) treating their Class A partnership interests in the Partnership as terminated; (2) taking actions requiring the approval of partners representing 75% of the partnership interest; and (3) taking actions requiring the approval of Governing Board members representing 75% of the voting interest of the Partnership, including making a capital call. The trial court denied the application as moot on the ground that all of these actions had already occurred. The Physician Partners appealed. The majority reverses and orders the trial court to issue the injunction and to set an injunction bond.

I respectfully dissent. I would find that all actions sought to be enjoined have already occurred, such that the application is moot, and that the majority opinion and judgment are advisory. I would also find that, even if the application is not moot, the Physician Partners have not satisfied the burden of proof for obtaining a temporary injunction. I would affirm the order of the trial court denying the application for temporary injunction.

**Background**

The Partnership was a general partnership created to own and operate the St. Luke's Sugar Land Hospital in Sugar Land, Texas (the "Hospital"). The Physician

2

Partners were four of ninety-six Class A partners. Dr. Patel and Dr. Vijayan each owned four partnership units, and Dr. Sonwalkar and Dr. Oladut each owned two partnership units. The Managing Partner owned all Class B units.

In July 2007, the Partnership adopted the Amended Partnership Agreement ("the Amended Agreement"), the terms of which are at issue in the underlying litigation.

The Amended Agreement eliminated a provision in the original Partnership Agreement that Class A Units would always represent 49% of the Percentage Interest and Class B Units would always represent 51% of the Percentage Interest in the Partnership. It substituted, in its stead, a provision which stated that each partner's Percentage Interest was to be calculated by "dividing the number of Units held by the Partner by the total number [of] Units issued and outstanding among all Partners at the time, all irrespective of class." The "Current Ownership" was listed as "Managing Partner," 51% and "Class A Partners," 49%. The Amended Agreement provided that additional capital might be required to be contributed to the Partnership "only with approval of Partners holding at least seventy-five (75%) of the Partnership Interest . . . ." The Amended Agreement also stated, "Such approval is required in addition to the consent of the Governing Board required under Section 8.9(e) hereof."

Section 8.9 provided that, generally, Governing Board decisions would require the affirmative vote of Board members controlling greater than 50% of the Voting Interest of all Board members. The Managing Partner's representatives controlled 51% of the Voting Interest, and the Physician Partners' representatives controlled 49% of the Voting Interest. Certain actions, such as requiring additional capital contributions, required affirmative approval from Board members controlling at least 75% of the Voting Interest. This provision remained unchanged from the original partnership agreement.

The Amended Agreement also provided that the affirmative vote of at least 75% of the total Partnership Interest was required to approve certain major transactions, including amending the Partnership Agreement, and that "neither the individual Partners nor the Governing Board nor the Managing Partner shall have any authority to . . . cause the Partnership to . . . amend or otherwise change this Agreement" without "the consent of Partners holding at least seventy-five percent (75%) of the Partnership Interest."

**A. The Physician Partners' First Application for Temporary Injunction**

In April 2011, the original plaintiff, Dr. Patel, sued the Partnership for breach of fiduciary duty, fraud, misrepresentation, and theft, alleging that he had been promised healthy returns by the Partnership but that the Hospital was operating at a net loss.

The next month, in May 2011, the Partnership sent a rescission offer to all of the Class A unit holders, which informed the Partners of the potential need for a reorganization and a capital call. This letter gave each recipient thirty days to elect to rescind his or her purchase of Class A units in exchange for a repayment of the purchase price plus six percent interest from the date of purchase.

Dr. Vijayan joined the suit as co-plaintiff. Drs. Patel and Vijayan then filed an application for injunction, seeking to enjoin the Partnership from taking any further action on the rescission offer, making any offer to purchase, redeem, or otherwise acquire Class A units, taking any action to alter the composition of the Governing Board, or taking any action to alter the 49% to 51% ratio of Class A partners to Class B partners represented as the "Current Ownership" when the Amended Agreement was executed. The trial court granted the injunction, but later dissolved it upon St. Luke's payment of money into the court's registry, out of which any eventual judgment in favor of Drs. Patel and Vijayan could be satisfied.

## B. The Physician Partners' Second Application for Temporary Injunction

All of the ninety-six holders of Class A units accepted the rescission offer except for Drs. Patel, Vijayan, Sonwalkar, and Oladut.

The Partnership then sent a notice to all ninety-six Class A unit holders indicating the overwhelming acceptance of the rescission offer and stating that,

5

after the buyout of Class A units, the remaining four Class A Physician Partners' ownership interest in the Partnership was less than 15%. This number was calculated by "dividing the number of Units held by the Partner by the total number [of] Units issued and outstanding among all Partners at the time, all irrespective of class," i.e., by dividing the numbers of units held by the four remaining Class A Physician Partners by the total number of units issued and outstanding among all Partners, including the Managing Partner, after the other physicians' acceptance of the rescission offer, as provided in the Amended Agreement.

Having announced the change in percentage ownership of the Partnership Interests, the Partnership also announced the adoption of an amendment concerning the composition of its Governing Board, in which the four remaining Class A Physician Partners would have the right to elect Board members in proportion to their new percentage interest in the Partnership. At the time the Amended Agreement was executed, the Class A Unit holders had represented 49% of the "Current Ownership" of the Partnership, and the Managing Partner had represented the other 51% of the "Current Ownership." Because they represented 49% of the total ownership interest of the Partnership, the Class A unit holders had been entitled to elect seven of the fifteen members of the Governing Board under the terms of the Amended Agreement. The Partnership relied upon the changed

6

percentage of ownership interests in further amending the Amended Agreement, drastically reducing the number of members the Physician Partners could elect due to their significantly reduced Percentage Interest.

The Physician Partners applied for a second temporary injunction seeking to enjoin the Partnership from calling a Class A unit holders meeting to elect fewer than seven representatives to the fifteen-member Governing Board. The trial court denied the injunction. The Physician Partners did not appeal this ruling.

### C. The Physician Partners' Third Application for Temporary Injunction

On September 2, 2011, after denial of the Physician Partners' second application for temporary injunction, the Governing Board sent notice of a capital call to the Physician Partners for more than $400,000 from Drs. Patel and Vijayan and for more than $200,000 from Drs. Sonwalkar and Oladut. The notice warned that if the capital call payments were not received within thirty days, the Partnership could terminate their interests. In lieu of holding a Partners' meeting, the capital call was issued by the Managing Partner, which owned a greater than 75% Partnership Interest in the Partnership after the buyout of ninety-two of the ninety-six Class A unit holders.

Shortly afterwards, Dr. Sonwalkar and Dr. Oladut joined the lawsuit. None of the four Physician Partners made any contribution in response to the capital call, while the Managing Partner contributed $24,000,000. When the Partnership sent

the Physician Partners written notice of their default and offered them the opportunity to cure, they failed to do so.

On October 3, 2011, the Physician Partners filed a third application for a temporary injunction. They again sought to enjoin the Partnership from (1) terminating their Partnership Interests; (2) taking actions requiring the approval of Partners representing 75% of the total Partnership Interest, including amending the Partnership Agreement; and (3) taking actions requiring the approval of Governing Board members representing 75% of the Voting Interest, including making a capital call. The Physician Partners again contended that they owned 49% of the Partnership and of the Voting Interest, which was relevant to actions of the Governing Board, under the terms of the Amended Agreement, that the Managing Partner still had only a 51% Partnership and Voting Interest, and that they would be irreparably harmed by the termination of their Partnership Interests.

While this third application for injunctive relief was pending, the Partnership went forward with the previously planned and noticed capital call. The Partnership then notified the Physician Partners that, as of October 19, 2011, their Partnership Interests had been terminated. As a result, only the Managing Partner remained as a unit holder. Before the trial court ruled on the Physician Partners' third application for a temporary injunction, the Physician Partners informed the trial court in a supplemental brief that the Partnership had purportedly terminated their

8

partnership interests for failure to participate in the capital call. The trial court denied injunctive relief on November 7, 2011. The Physician Partners then filed an accelerated appeal challenging this ruling in this Court. Prior to issuance of an opinion, Drs. Patel and Vijayan voluntarily moved to dismiss their appeal, leaving Drs. Sonwalkar and Oladut as the only appellants. The Physician Partners did not request temporary relief to prevent the Partnership from taking further actions pending interlocutory appeal.[1]

Because there was no longer more than one partner after the Physician Partners' partnership interests were terminated, the Partnership ceased to operate as a Partnership and became wholly owned by the Managing Partner, a non-profit entity. In order to carry out its status as a non-profit corporation and to comply with regulatory guidelines applicable to the operation of a non-profit hospital, the Managing Partner undertook certain actions that included terminating existing agreements, transferring its Medicare provider number, advising various governmental entities and agencies of the change in provider services, obtaining

---

[1] Texas Civil Practice and Remedies Code section 51.014 provides for interlocutory appeal of denial of an application for temporary injunction. TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(4) (Vernon Supp. 2013). It does not stay the commencement of a trial in the trial court pending resolution of the interlocutory appeal. *Id.* § 51.014(b). Pursuant to Texas Rule of Appellate Procedure 29.3, in an interlocutory appeal, an appellate court "may make any temporary orders necessary to preserve the parties' rights until disposition of the appeal and may require appropriate security." TEX. R. APP. P. 29.3. The Physician Partners did not seek such relief in this Court.

new accreditation, and changing a number of agreements. Finally, the property on which the Hospital was located, previously leased by the Partnership, was purchased by an affiliated company of the Managing Partner.

In a published opinion issued on August 16, 2012, a panel of this Court reversed the trial court's order denying Dr. Sonwalkar's and Dr. Oladut's third application for a temporary injunction and remanded the case "for further proceedings consistent with this opinion." *Sonwalkar v. St. Luke's Sugar Land P'ship L.L.P.*, 394 S.W.3d 186, 203 (Tex. App.—Houston [1st Dist.] 2012, no pet.). The Court did not, however, instruct the trial court to enter an injunction, and it did not. The majority now orders enjoined, in response to the Physician Partners' interlocutory appeal of the denial of their subsequently filed renewed application for temporary injunction, the same actions the Physician Partners sought to enjoin in their third application for temporary injunction.

### D. The Physician Partners' Renewed Application for Temporary Injunction

On December 13, 2012, the Physician Partners filed this renewed application for temporary injunction. They again sought to enjoin the Partnership from excluding them from governance of the now-defunct Partnership, from making a capital call, and from transferring the operation or ownership of the Hospital— actions that had formed the subject of their third application for a temporary injunction and that had already transpired before the application was renewed.

10

Specifically, the Physician Partners sought to enjoin the Partnership, in relevant part, from (1) taking any action to terminate their partnership interests and (2) denying their ability to participate in a Governing Board vote as 49% Voting Interest holders, including votes on actions to (a) borrow more than $250,000 from any third party for any purpose; (b) "[s]ell, transfer, assign, dispose of, trade, exchange, quitclaim, surrender, release or abandon any Partnership property" with a value of $250,000 or more; (c) "call for any additional capital contributions"; and (d) "approve any fundamental or material change to the general business objectives and purpose of the Partnership." St. Luke's moved to dismiss the application for injunction as moot, arguing that circumstances had changed since the filing of the third application for a temporary injunction, which the Physician Partners had renewed after remand.

At the hearing on the temporary injunction, St. Luke's Episcopal Health Care System Senior Vice President David Koontz, a former member of the Board of the Partnership, testified to the actions that had already taken place, including the capital call and the termination of the Physician Partners' Partnership Interests. He also testified that St. Luke's Episcopal Health System had paid off several loans that the Partnership had taken out; that the Partnership's main asset, the Hospital, had been transferred to the Managing Partner and the Partnership had ceased operations; that the non-profit Managing Partner had taken over operation

11

of the Hospital and the Partnership's licenses, such as the Medicare provider number; and that the Partnership no longer held any assets.

The trial court denied the Physician Partners' renewed application for temporary injunction, finding that it was moot.

The Physician Partners then filed both a notice of accelerated appeal and a petition for writ of temporary injunction, again asking this Court to reverse the trial court's denial of their application for temporary injunction and to remand the case with specific instructions to the trial court to issue a temporary injunction. A panel of this Court denied the petition for a writ of temporary injunction in July 2013 on the ground that the requested relief was not necessary to preserve this Court's jurisdiction over the interlocutory appeal. *In re Patel*, No. 01-13-00330-CV, 2013 WL 3422026, at *1 (Tex. App.—Houston [1st Dist.] July 2, 2013, orig. proceeding).

In ruling on this interlocutory appeal, the majority of this panel now reverses the trial court's denial of the application for temporary injunction, remands the case to the trial court with instructions to enter the injunction, and orders the trial court to set an injunction bond.

I agree with St. Luke's that the Physician Partners' application for temporary injunction is moot. Moreover, I believe the majority has overstepped the bounds of its interlocutory appellate jurisdiction. It has enjoined actions that have long ago

12

taken place and no longer present a controversy as to which effective injunctive relief can be granted; it has improperly decided issues in favor of the Physician Partners relevant to the merits of the underlying litigation; and it has issued an advisory opinion effectively ordering specific performance of the Amended Agreement of the now-defunct Partnership as the majority construes its terms, thereby effectively invalidating, inter alia, the termination of the Partnership, the $24,000,000 capital call, and an array of license agreements, contracts, and regulatory filings made by St. Luke's pursuant to its understanding of the terms of the Amended Agreement that is the subject of the litigation pending in the trial court.

I see no jurisdiction in this Court to construe the Amended Agreement, decide what its terms require, and grant relief in terms of specific performance when the proper construction of that agreement is the subject of the underlying proceeding in the trial court. I also see no reason why the Physician Partners could not be compensated in damages for any injury to their Partnership Interests they may be found to have suffered from St. Luke's alleged breach of contract, breach of fiduciary duty, fraud, and negligent misrepresentation when their claims proceed to trial. I do not believe, therefore, that the Physician Partners have satisfied the standard of proof they must meet to justify the issuance of a temporary

injection—even if their application seeking to enjoin past actions of the Partnership were not moot.

## Application for Temporary Injunction

The decision to grant or deny a temporary injunction is within the trial court's sound discretion. *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002); *Walling v. Metcalfe*, 863 S.W.2d 56, 58 (Tex. 1993) (per curiam). An appellate court must not substitute its judgment for that of the trial court unless the trial court's action was so arbitrary that it exceeded the bounds of reasonable discretion. *Butnaru*, 84 S.W.3d at 204. The trial court does not abuse its discretion by making a decision based on conflicting evidence. *Shor v. Pelican Oil & Gas Mgmt., LLC*, 405 S.W.3d 737, 748 (Tex. App.—Houston [1st Dist.] 2013, no pet.). The trial court abuses its discretion when it misapplies the law to established facts or when the evidence does not reasonably support the trial court's decision. *Id.*; *Pharaoh Oil & Gas, Inc. v. Ranchero Esperanza, Ltd.*, 343 S.W.3d 875, 881 (Tex. App.—El Paso 2011, no pet.).

In reviewing an order granting or denying an application for temporary injunction, we review the evidence submitted to the trial court in the light most favorable to its ruing, drawing all legitimate inferences from the evidence, and deferring to the trial court's resolution of conflicting evidence. *INEOS Grp. Ltd. v.*

14

*Chevron Phillips Chem. Co.*, 312 S.W.3d 843, 848 (Tex. App.—Houston [1st Dist.] 2009, no pet).

**A. Mootness**

The Physician Partners contend that their application for a temporary injunction is not moot and that this Court may grant them the relief the trial court refused to grant when it denied their application. I disagree.

"A case becomes moot if at any stage there ceases to be an actual controversy between the parties." *Nat'l Collegiate Athletic Ass'n v. Jones*, 1 S.W.3d 83, 86 (Tex. 1999). An issue may be moot if it becomes impossible for the court to grant effectual relief. *In re H&R Block Fin. Advisors, Inc.*, 262 S.W.3d 896, 900 (Tex. App.—Houston [14th Dist.] 2008, orig. proceeding); *see Rawlings v. Gonzalez*, 407 S.W.3d 420, 428 (Tex. App.—Dallas 2013, no pet.) (holding that trial court could not enjoin actions that had already occurred); *see also Williams v. Lara*, 52 S.W.3d 171, 184 (Tex. 2001) (holding that for plaintiff to have standing, controversy must exist between parties at every stage of legal proceedings, including appeal; if case becomes moot, parties lose standing to maintain their claims).

"Appellate courts are prohibited from deciding moot controversies." *Jones*, 1 S.W.3d at 86. "When a temporary injunction becomes inoperative due to a change in status of the parties or the passage of time, the issue of its validity is also

15

moot," and an appellate court's opinion about the temporary injunction's validity under such circumstances is an advisory opinion. *Id.* The mootness doctrine prevents courts from rendering advisory opinions, which lie outside the jurisdiction conferred on the courts by the Texas Constitution. *See id.*; *In re H&R Block*, 262 S.W.3d at 900; *see also Valley Baptist Med. Ctr. v. Gonzalez*, 33 S.W.3d 821, 822 (Tex. 2000) (per curiam) (holding that appeal of order became moot when order was complied with and court of appeals was notified and that court of appeals erred in issuing advisory opinion on merits of appeal).

I agree with the trial court that the actions the Physician Partners seek to enjoin all occurred before they filed their renewed application for temporary injunction and that their request for a temporary injunction enjoining these actions is moot. There is no evidence of a continuing controversy of the type the Physician Partners seek to prospectively enjoin. There is pending litigation in the trial court. And there may be evidence in those proceedings of St. Luke's breach of the Amended Agreement. There may also be evidence of breach of fiduciary duty, fraud, or negligent misrepresentation on the part of St. Luke's sufficient to convince a jury that the Physician Partners' claims in the underlying litigation have merit and that they are entitled to a judgment against St. Luke's. But those claims are not before this Court; they are before the trial court. And there is *no* evidence that the controversy the Physician Partners seek to enjoin is ongoing.

16

There is no evidence that the now-defunct Partnership is (1) taking any action to terminate the Physician Partners' Partnership Interests; (2) borrowing more than $250,000 from any third party for any purpose without the Physician Partners' ability to participate in a Governing Board vote to approve that action as 49% Voting Interest holders; (3) selling, transferring, assigning, disposing of, trading, exchanging, quitclaiming, surrendering, releasing or abandoning any Partnership Property with a value of $250,000 or more; (4) calling for any additional capital contributions; or (5) approving any fundamental or material change to the general business objectives and purpose of the Partnership. Instead, St. Luke's presented evidence that the Partnership has already terminated the Physician Partners' Partnership Interests and that the Partnership itself has transferred its assets, including licenses and other documentation essential to operating the Hospital, to the Managing Partner, the sole remaining Partner after the termination of the Physician Partners' interests, and has ceased operating the Hospital.

The Physician Partners argue that their request for a temporary injunction is nevertheless not moot because the Partnership altered the status quo before "the judicial process [could] determine whether a temporary injunction is warranted." They rely on *Intercontinental Terminals Co., L.L.C. v. Vopak North America, Inc.*, 354 S.W.3d 887, 892–93 (Tex. App.—Houston [1st Dist.] 2011, no pet.) (holding

17

that trial court could have reasonably concluded that injunction balanced parties' interests in status quo when it limited use of track to seventy railcars per day, although appellant had argued injunction order impermissibly altered status quo because it had already limited number of railcars to thirty-five).

The Physician Partners' argument regarding the status quo is misplaced. The judicial process determined that an injunction was not warranted when the trial court denied the Physician Partners' third application for a temporary injunction in November 2011, and the Physician Partners failed to seek temporary relief when they appealed that denial to this Court. Even at that time, many of the actions complained of by the Physician Partners in this renewed application for temporary injunction had already taken place—including the capital call, the Partnership's denial of the Physician Partners' management rights, and the termination of the Physician Partners' Partnership Interests. Subsequently, the other actions the Physician Partners effectively seek to enjoin—such as the transfer of Partnership assets—occurred before the Physician Partners filed, and the trial court denied, this renewed application for temporary injunction.

An application for injunction invokes a court's equitable jurisdiction. *In re Gamble*, 71 S.W.3d 313, 317 (Tex. 2002); *NMTC Corp. v. Conarroe*, 99 S.W.3d 865, 868 (Tex. App.—Beaumont 2003, no pet.). Equity "aids the diligent and not those who slumber on their rights." *In re Laibe Corp.*, 307 S.W.3d 314, 318 (Tex.

18

2010) (per curiam) (quoting *Rivercenter Assocs. v. Rivera*, 858 S.W.2d 366, 367 (Tex. 1993)). In this case, the Physician Partners were provided notice on several occasions that the Partnership was planning to terminate their Partnership Interests for their failure to contribute in response to the capital call. On October 19, 2011, before the trial court ruled on the third application for injunctive relief, the Partnership sent the Physician Partners a letter informing them that their Partnership Interests had been terminated. Yet, even with several letters informing them that the Partnership was planning to terminate their Partnership Interests and even though the Partnership had sent a notice informing them that it had actually terminated their Partnership Interests, the Physician Partners did not seek a stay when they appealed the trial court's denial of their request for an injunction in November 2011. *See* TEX. R. APP. P. 29.3 (providing, in interlocutory appeals, that appellate courts may "make any temporary orders necessary to preserve the parties' rights").

Thus, unlike in *Intercontinental Terminals* in which the injunction entered by the trial court could have preserved the status quo, *see Intercontinental Terminals Co.*, 354 S.W.3d at 893, in this case the trial court could have reasonably concluded that the status quo had already been altered and the actions the injunction sought to preclude were already accomplished. *See Day v. First City Nat'l Bank of Houston*, 654 S.W.2d 794, 795 (Tex. App.—Houston [14th Dist.]

19

1983, no writ) ("Since the action sought to be enjoined has already been performed, we are no longer capable of ruling on the matter before the Court."). All of these actions took place before the renewed application for temporary injunction was even filed, much less before the trial court denied it as moot.

I would hold that the trial court did not abuse its discretion by denying the Physician Partners' renewed application for a temporary injunction.[2] *See Rawlings*, 407 S.W.3d at 428 (holding that trial court could not enjoin actions that had already occurred); *In re H&R Block*, 262 S.W.3d at 900 (stating that issue may be moot if it becomes impossible for court to grant effectual relief). I agree, therefore, with the trial court that the Physician Partners' application for temporary injunction is moot, and I would affirm the trial court's order dismissing the application.

---

[2] The Physician Partners also argue that the appeal of the denial of the temporary injunction is not moot because several of the actions already accomplished, such as termination of their partnership interests, were ultra vires actions under the Amended Agreement. Whether or not the Partnership was authorized to terminate the Physician Partners' interests and transfer the Partnership without their participation in a Governing Board vote, this Court has no jurisdiction to render advisory opinions when all of the requested relief has been foreclosed by a change in circumstances. *See Speer v. Presbyterian Children's Home & Serv. Agency*, 847 S.W.2d 227, 229 (Tex. 1993) ("Dismissal for mootness is not a ruling on the merits.").

20

## B. Interlocutory Appellate Jurisdiction Over Temporary Injunction Rulings

Because I believe the controversy with respect to which the majority writes is moot, I also believe that this Court is without jurisdiction to grant the relief sought by the Physician Partners and that the majority opinion and judgment are advisory. *See Jones*, 1 S.W.3d at 86 (prohibiting rendition of advisory opinions); *see also Valley Baptist Med. Ctr.*, 33 S.W.3d at 822 (vacating court of appeals' judgment and opinion on moot controversy as advisory and dismissing cause as moot).

The interlocutory appeal statute is strictly construed as an exception to the general rule that only final judgments are appealable. *LTTS Charter Sch., Inc. v. C2 Constr., Inc.*, 342 S.W.3d 73, 76 (Tex. 2011); *see Tex. A&M Univ. Sys. v. Koseoglu*, 233 S.W.3d 835, 840 (Tex. 2007) ("Appellate courts have jurisdiction to consider immediate appeals of interlocutory orders only if a statute explicitly provides such jurisdiction."). Interlocutory appellate jurisdiction over denial of a temporary injunction accorded by statute is restricted to determining whether the trial court has overstepped the bounds of its discretion in ruling on the application for temporary injunction, and it does not extend to determining the underlying case on its merits. *See Davis v. Huey,* 571 S.W.2d 859, 861–62 (Tex. 1978); *Shor*, 405 S.W.3d at 748 (holding same); *see also* TEX. CIV. PRAC. & REM. CODE ANN.

21

§ 51.014 (a)(4) (Vernon Supp. 2013) (granting right to appeal from interlocutory order of district court that "grants or refuses a temporary injunction").

The majority, however, disagrees that this application for temporary injunction is moot, and, therefore, it assesses and determines issues related to the merits of the underlying litigation in order to determine whether the trial court overstepped the bounds of its discretion in ruling on the Physician Partners' application for temporary injunction, in contradiction of established case law holding that interlocutory appellate jurisdiction does *not* extend to determining the merits of the underlying case. *See Davis*, 571 S.W.2d at 861–62; *Shor*, 405 S.W.3d at 748. The majority analyzes the language of the underlying agreement and notes that (1) the previous panel's opinion "already explained that the doctors demonstrated a probable right to injunctive relief to prevent the Partnership from squeezing out the physicians by means of the capital call without approval by 75% of the Voting Interest as required by the Amended Partnership Agreement" and (2) "[e]ven assuming that the capital call was legitimate, and even assuming the physician partners defaulted by failing to respond to the capital call, the Partnership still failed to effectively terminate the physicians' partnership interests under the Amended Partnership Agreement . . . ." Slip Op. at 17 (citing *Sonwalkar*, 394 S.W.3d at 202).

22

The majority further concludes that the Physician Partners were not in default and that their Partnership Interests were not actually terminated. Slip Op. at 18. It determines that the Partnership has not completed its winding-up process and has not terminated. Slip Op. at 19–20. It also concludes, without reference to legal authority (and noting the absence of evidence in the interlocutory appellate record) that "the misunderstanding held by the managing partner about the legal effect of its attempt to terminate the physicians' partnership interests did not have the effect of extinguishing the Partnership or any ownership rights the Partnership has in the hospital." Slip Op. at 21. Finally, it concludes "that the suggestion of intervening circumstances causing the physicians' application to become moot is unavailing" and that it finds no reason not to grant the requested injunction. Slip Op. at 22.

Thus, the majority ultimately reverses the order of the trial court and remands the cause "for further proceedings to set an injunction bond and issue the [Physician Partners'] requested temporary injunction." Slip Op. at 23. In short, under the guise of deciding whether the trial court abused its discretion in denying the Physician Partners' renewed application for a temporary injunction as moot, the majority issues an advisory opinion, preemptively construing the terms of the Amended Agreement and partially determining the merits of the underlying litigation pending in the trial court.

I find no jurisdiction in this Court to construe the terms of the contract at issue in the underlying litigation for breach of the Amended Agreement, breach of fiduciary duty, fraud, and negligent misrepresentation or to decide the merits of the case. *See Davis,* 571 S.W.2d at 861–62 (holding jurisdiction of appellate court on interlocutory appeal of temporary injunction strictly limited to ruling on application and merits cannot be reached); *see also Williams*, 52 S.W.3d at 184 ("If a case becomes moot, the parties lose standing to maintain their claims."); *Valley Baptist Med. Ctr.*, 33 S.W.3d at 822 (vacating court of appeals' judgment and opinion on moot controversy as advisory); *Jones*, 1 S.W.3d at 86 (holding that appellate courts are prohibited from deciding moot controversies and opinion about validity of trial court's temporary injunction ruling after temporary injunction becomes inoperative is advisory); *In re H&R Block*, 262 S.W.3d at 900 (stating that issue may be moot if it becomes impossible for court to grant effectual relief). Therefore, the opinion of this Court granting that relief based on its opinion as to whether St. Luke's actions *should* have taken place is, at this point, advisory.[3] *See Jones*, 1 S.W.3d at 86 (stating that Texas Constitution prohibits rendition of

---

[3]    The Physician Partners did not ask the trial court to unwind, to the extent possible, the actions taken by the Partnership that they allege abrogated their rights and that the majority opinion and judgment nevertheless effectively grants. Nor have they standing to make such a request of this Court in this interlocutory appeal. *See Williams v. Lara*, 52 S.W.3d 171, 184 (Tex. 2001) ("If a case becomes moot, the parties lose standing to maintain their claims.").

24

advisory opinions). I would determine this interlocutory appeal solely on mootness grounds.

**C. Proof of Entitlement to Temporary Injunction**

Even if I were to agree with the majority that the Physician Partners' application for a temporary injunction was not moot, however, I would affirm the trial court's order denying the injunction because I do not think the Physician Partners have satisfied their burden of showing their entitlement to a temporary injunction.

The purpose of a temporary injunction is to preserve the status quo of the litigation's subject matter pending a trial on the merits. *Butnaru*, 84 S.W.3d at 204; *Walling*, 863 S.W.2d at 57. A temporary injunction is an extraordinary remedy that does not issue as a matter of right. *Butnaru*, 84 S.W.3d at 204. To obtain a temporary injunction, an applicant must plead and prove "(1) a cause of action against the defendant; (2) a probable right to the relief sought; and (3) a probable, imminent, and irreparable injury in the interim." *Id*. "An injury is irreparable if the injured party cannot be adequately compensated in damages or if the damages cannot be measured by any certain pecuniary standard." *Id.*

The Physician Partners' causes of action pleaded against St. Luke's for breach of contract, breach of fiduciary duty, fraud, and negligent misrepresentation have been pending in the trial court since 2011, during which time the Physician

25

Partners have repeatedly delayed resolution of the litigation by filing serial applications for a temporary injunction seeking to enjoin past actions of St. Luke's. I see no legal right of the Physician Partners at this time to enjoin the Partnership from (1) taking any action to terminate their partnership interests, which were terminated in 2011 or (2) barring them from participating in Governing Board votes of the now-defunct Partnership as 49% Voting Interest holders with respect to actions to (a) borrow more than $250,000 from any third party for any purpose; (b) "sell, transfer, assign, dispose of, trade, exchange, quitclaim, surrender, release or abandon any Partnership property" with a value of $250,000 or more; (c) "call for any additional capital contributions"; or (d) "approve any fundamental or material change to the general business objectives and purpose of the Partnership." Again, these actions have already taken place.

Moreover, any right the Physician Partners might have had to stop any of these actions in the past would have depended upon the construction of the disputed terms of the Amended Agreement in their favor—the principal issue pending in the trial court. And, while the majority construes those terms in the Physician Partners' favor and preemptively decides issues relevant to the merits of the underlying case, I do not see that the Physician Partners have presented any legal argument, authority, or evidentiary support for their construction of the Amended Agreement in this Court that would enable us to determine their rights in

26

their favor for purposes of an injunction, that is, to determine that they are, or were, probably entitled to a judgment in the underlying litigation that, on balance, would justify maintaining the status quo ante until the trial could be had.

Even if I were to find support in the interlocutory appellate record for maintaining the status quo ante until the Physician Partners' claims in the trial court could be decided—claims that St. Luke's violated its fiduciary duty to the Physician Partners by failing to keep the Partnership's alleged promise to make money; that St. Luke's made misrepresentations to the Physician Partners and defrauded them; and that St. Luke's breached its fiduciary duties and breached the Amended Agreement by counting the Physician Partners' percentage interest in ownership of the Partnership at less than 49% after the buyout of the other Class A unit holders by St. Luke's; improperly further amended the Amended Agreement after the buyout and violated their rights as Partnership Interest Owners by not allowing them the opportunity to appoint seven members to the Governing Board; improperly issued the capital call to which they failed to respond; improperly terminated their Partnership Interests; and then improperly terminated the Partnership and transferred its assets—I still would find no reason to believe that the Physician Partners could not be adequately compensated for those actions by an award of damages, as is customary in breach of contract, breach of fiduciary duty, fraud, and negligent misrepresentation cases. *See, e.g.*, *N. Cypress Med. Ctr.*

*Operating Co. v. St. Laurent*, 296 S.W.3d 171, 176 (Tex. App.—Houston [14th Dist.] 2009, no pet.) (holding that remedy on appeal was adequate for termination of ownership interest of physician who owned shares in limited partnership that owned and maintained hospital, but did not have right to manage or control partnership's operation, business, or activities, where physician's loss was "only his proportionate share in the partnership's net income and any future distributions," both of which "represent an interest in *money*") (emphasis in original).

For those same reasons, I am unable to conclude that the Physician Partners will suffer the required "probable, imminent, and irreparable injury in the interim" between this Court's action on their renewed application for temporary injunction and trial on the merits of their claims, as required to overturn an order denying a temporary injunction. *See Butnaru*, 84 S.W.3d at 204 ("An injury is irreparable if the injured party cannot be adequately compensated in damages or if the damages cannot be measured by any certain pecuniary standard.").

## Conclusion

Because the trial court was presented with adequate evidence that the actions that the Physician Partners sought to enjoin had already occurred, I would hold that it did not abuse its discretion in denying their application for a temporary

28

injunction. I would affirm the order of the trial court denying the Physician Partners' renewed application for a temporary injunction as moot.

Evelyn V. Keyes
Justice

Panel consists of Justices Keyes, Higley, and Massengale.

Justice Keyes, dissenting.